Ruffin, C. J.
 

 It is always painful to a Judge, to disappoint the intentions he believes to" have been entertained by a testator, though lie has not sufficiently expressed them; and it is so especially, when
 
 the
 
 testator’s intentions were so praise-worthy as those which, as the defendant says, this testator entertained and which it is extremely probable he did entertain. But it is a perfectly well known principle of law, that a Court cannot go out of a will to construe it. The paper must tell us the testator’s meaning, or we can never find it out; and if he hath not sufficiently disposed of his property, it falls, as a matter of course, to His next of kin.
 

 An argument for tlj.e defendant is, that the next of kin arc cut off by the gifts from them, which are to be applied in the discretion and judgment of the defendant ; claiming for the defendant the largest authority of the testator himself. But with the exceptions of those bequests, which are technically called “ charitable,” the rule is quite the other way. When a gift is made, in trust, the donee cannot take it for his own benefit, in opposition to the intention of the donor. Then it follows,' that, to sustain such a gift in trust, the trust itself must be valid; and, to make it so, it must be in favor of such persons, natural or artificial, as can legally take. Therefore, it was held, in
 
 Morris v. Bishop of Durham,
 
 9 Ves. 399, 10 Ves. 522, that a gift to the Bishop, “ to be disposed of to such objects of benevolence and liberality as ho should most approve of,” was void for its vagueness and generality ; inasmuch as no person or persons in particular could claim the benefit of the gift or enforce the Bishop to bestow charity upon any person, while it was yet clear that the Bishop could not keep it to himself. Therefore-, the subjects of Such gifts result to the heir or next of kin of the donor. Ido far, then, as the attempt goes to support this bequest on the ground, that it is to be applied to the
 
 *30
 
 objects, which the executor might think proper, according to the scriptures, it must fail; because, if the executor were dishonest enough to keep the money in his own pocket, there is no person that could institute an action to" call for any part of the sum, unless it be the next of kin.
 

 But it is further said, that these gifts are sufficiently precise to make them good as charities for religious purposes. And we have no doubt, that, in England, they would be so held, and that with the view of applying them to purposes quite opposite to those wished by this testator, upon the doctrine of
 
 cy. pres.
 
 But we have no authority in this country, which, like the King in England, or the Chancellor, can administer a fund upon that arbitrary principle. So it has been held in this State, more than once.
 
 McAuley
 
 v. Wilson, 1 Dev. Eq. 270.
 
 Holland
 
 v.
 
 Peck,
 
 2 Ired. Eq. 255. In the former case,- it was laid down, that, if there be a bequest to charity, which cannot take effect, the Court cannot conjecture that the testator would desire it to go in some other charity, and then take a step further, and say that the testator meant that the-Court should select an object for the testator, -which he omitted effectually to do for himself. Therefore, a bequest for religious charity must, like others, be to some definite purpose, and to some body or association of persons, having a legal existence, and with capacity to take. Or, at the least, it must be to some such body, on which the Legislature shall, within a reasonable time, confer a capacity to take. The Revised Statute, c. 09, authorises religious societies to choose trustees, and vests them with power to purchase and hold the churches, glebes and land, and' to receive gifts of any kind, for the use of the society or congregation: provided, that no single congregation shall hold land to a greater annual value than $400, or in quantity more than 2000 acres. That has been extended, by an act of the last Assembly, 1844, c. 47, which allows the church or sect in the aggregate, as the Conference, Synod, -or
 
 *31
 
 Convention, representing a religions denomination in tlie State, to appoint trustees, who may receive donations, and take and hold propertjq real or personal, in trust for the church within this State. So far, therefore, there is a capacity in religious congregations of particular denominations, and, now, in the aggregate church of the several denominations, to take property for the religious uses of the congregation or church. And it is probable, that a gift to build a church at a particular place, for the purpose of forming or constituting a church of any one known denomination, might be sustained in favor of a congregation regularly though newly organized. But it is clear, the statutes throughout have only those religious charities or purchases in their purview, which are made to or for the benefit in severalty of some church, sect or society, known as a denomination. For the Legislature -was fully aware of the existence of various sects or churches in the State, and of their general utility and harmonious action, when each moves in its own orbit, and is sustained by its own members; and, therefore, the requisite provision is made for securing the place of worship of each, and supplying such income from donations or purchases as the Legislature deemed adequate for keeping the congregation together, and enabling each church to fulfil its functions of benevolence and instruction of its members, and of such persons as should resort thither for spiritual edification. But there is no provision for donations, .to be employed in any general system of diffusing the knowledge of Christianity throughout the earth. That is left to those, who choose to administer their own means in such charities, or in their life-times to trust to others, in whose hands-they place the funds: for in those cases the acts are personal or the confidence is so, and there is no call for the aid of the Court to compel the parties to their duty.. Wherever the aid of the Court is invoked, there must appear some right in the person, who applies, or for whose
 
 *32
 
 benefit it is sought, to support a gift by will. In the present case, it is impossible, from any thing appearing in the will, to conjecture how, by whom, or in whose favour, these sums of money were to be administered. What hi nd of “ foreign missions,” whether diplomatic or religious, or, if the latter, of what sect, or to what countries, no man can say. So, likewise, of the “ home mission.” The gift to the “ poor saints” is equally indefinite. If the testator had told us, who were meant by
 
 him
 
 by that description, the persons thus meant should have tire benefit of the bequests, however much below the description of
 
 saints
 
 they might fall. But it is impossible at this day, and in this country, to say, judicially, that this or that man is a saint, or even a Christian ; much less can a bequest be supported for all poor saints indefinitely, that is, who are in the world. The poor of a County or City are proper objects of such a charity; for the objects of bounty are readily known, and their number easily ascertained, and the gift is in fact to the public.
 
 State
 
 v.
 
 Gerard, 2
 
 Ired. Eq. 210. But “ poor saints,” if it could be known who they are at all, are not mentioned in the will, as of any County, nor country; but, if any can take, all such persons, throughout the world, are to share in it; which is preposterous.
 

 We think, therefore, that the several bequests must be declared to be too indefinite and void, and that the plaintiffs are -entitled to an account, except Bridges and Duncan. They appear, upon the answer and exhibits, to have received their shares of the estate, and, at all events, for a consideration expressed, have given releases of any demand for,a further share of the estate ; and therefore the bill must be dismissed as to them.
 

 Per Curiam.
 

 Decreed accordingly.