R. W. THOMAS, Exr, v. ANNA LINES and others.

*Construction of Will—"Capital"—Evidence—Declaration of Testator—Agreement of Partnership.*

1. A testator by his will devised as follows : "I give unto my beloved wife A, all the household and kitchen furniture, &c., with all the growing crops on the farm, &c. ; also one-third part of my entire interest in my capital invested in the firm of C. M. & G. Lines (except my interest in the buildings and machinery used and occupied as store and shoe manufactory) to have and to hold as her own property in her own right. I also give unto my beloved wife A during her natural life the use of the dwelling-house and lot where I now live, * * * and also the use of the Dodson farm with its minerals, &c., during her natural life. I also give unto C one hundred dollars and to M fifty dollars ; the above bequests to be taken out of my capital invested in the firm of C. M. & G. L. ; the residue of my capital invested in the firm, after paying my individual debts and funeral expenses, I give one-third to my daughter H, one-third to the children of my deceased son C, and one-third to the daughter of my deceased son R. I also give to the daughter of my deceased son R, the twenty-four acre lot bought of T, * * * . At the death of my beloved wife A, I desire and will that the Dodson farm be sold and equally divided between the children of my deceased sons C and R. All the residue of my property * * * I give unto my daughter H, subject to the use of the dwelling-house and lot to my beloved wife A, during her natural life ; *It was held,*

(1.) That the accumulated earnings of the firm of C M. & G. L. which remained invested in its business equally with the sums originally put in constitute its capital, and the widow is entitled to one-third part of the aggregate amount to which the testator would be entitled upon a settlement.

(2 ) That the legacies to C and M must be taken from the remaining two-thirds of the capital.

(3.) That a certain sum of money found in a drawer in the safe belonging to the firm, (the key to which drawer the testator kept) and which corresponded in amount precisely with the sum charged against him in his cash book, and which was found by the court below to be the property of the firm, must be deemed part of the assets of the firm and of the capital disposed of in the will.

(4.) That the growing crop on the Dodson farm belongs to the widow.

(5.) That the growing crop on the twenty-four acre lot does not belong to the daughter of .R, but vests in the executor.

(6.) That the money arising from the sale of the Dodson farm after the death of the widow must be divided among the children of C and R *per capita.*

(7.) That the machinery in the shoe manufactory as well as the buildings belonging to the firm are embraced in the words "the residue of my capital invested &c.," and after the deduction of debts and funeral expenses are devised in three equal parts to the testator's daughter H, the children of C and the daughter of R.

2. A memorandum of a declaration, made by a testator intermediate between the making of his will and his death, is not admissible in evidence to show an intent different from that expressed in the will.

3. A tacit understanding among partners contravening the agreement (which then subsisted) on which the firm was formed is not admissible in evidence to modify and impeach its terms.

(*Donaldson* v. *Benton*, 4 Dev. & Bat., 435 ; *Reynolds* v. *Magness*, 2 Ired., 26 ; *Miller* v. *Derr*, 69 N. C., 137 ; *Hester* v. *Hester*, 2 Ired. Eq., 330 ; *Cheeves* v. *Bell*, 1 Jones Eq., 284 ; *Lane* v. *Lane*, 1 Winst. Eq., 84 ; *Waller* v. *Forsythe*, Phil. Eq., 353, cited and approved.)

CIVIL ACTION for construction of a will, tried at January Special Term, 1880, of DAVIDSON Superior Court, before *Schenck. J.*

The defendants appealed from the judgment below.

No counsel for plaintiff.

*Messrs. J. M. Clement* and *J. M. McCorkle*, for defendants.

SMITH, C. J. The object of the action instituted by the plaintiff, executor of Charles M. Lines, deceased, against the defendants, his legatees and devisees, is to obtain an authoritative construction of certain provisions of his will in order to the proper discharge of its trusts. The testator died in June, 1877, having in April preceding, made his will in due

form to pass his estate, the material facts of which relating to the subject matter in controversy, are as follows:

1. " I give unto my beloved wife Anna Lines, all the household and kitchen furniture, with all the horses, cattle, sheep and hogs, my wagon, carriage and all the harness, the plows and all farming implements, with all the growing crops on the farm, and all the grain and provisions on hand at the time of my death; also òne-third of my entire interest in my capital invested in the firm of C. M. & G. Lines, (except my interest in the buildings and machinery used and occupied as store and shoe manufactory) to have and to hold as her own property in her own right. I also give unto my beloved wife Anna Lines, during her natural life, the use of the dwelling house and lot where I now live, (except so much as is occupied for store and shoe manufactory) and also the use of the Dodson farm, with all of its minerals, whim, gold mill and fixtures, during her natural life.

I also give unto Anna Coltrain, daughter of Alice M. Coltrain, one hundred dollars; and to Mahala Marshall fifty dollars, if she should be living with us at the time of my death. The above bequests to be taken out of my capital invested in the firm of C. M. & G. Lines; the residue of my capital invested in the firm of C. M. & G. Lines, after paying my individual debts and funeral and burying expenses, I give one-third to my daughter Harriet G. Harris, one-third to the children of my deceased son Charles L. Lines, one-third to the daughter of my deceased son Royal J. Lines.

I also give to the daughter of my deceased son Royal J. Lines, the twenty-four acre lot bought of L. L. Thomas, in the year 1865 or 1866, also my half interest in the house owned by brother George and myself.

If Henderson Coltrain should pay my executor two hundred and fifty dollars, including what I may be owing him

13

at the time of my death, in one year after my death, I wish my executor to give him a deed for the house and lot where he now lives.

At the death of my beloved wife Anna Lines, I desire and will that the Dodson farm be sold and equally divided between the children of my deccased sons, Charles L. and Royal J. Lines. All the residue of my property, whether personal or real, I give unto my daughter Harriet G. Harris, subject to the use of the dwelling house and lot to my beloved wife Anna Lines, during her natural life."

The facts explanatory of the will, admitted or found by the judge with consent of parties instead of a jury are these: The partnership of C. M. & G. Lines, consisting of the testator C. M. Lines, who contributed to the capital stock $4,089.-10, Geo. Lines, who contributed $3,916.18, Harriet G. Harris, who contributed $1,068.97, and M. R. Tyler, who contributed $701.57, was formed and commenced business the beginning of the year 1874, under written articles, in which it was agreed that each member may draw from the common fund only for necessary family expenses, unless with the consent of the others; that an annual inventory of the effects shall be taken and no profits distributed until the debts are paid and the original sums paid in restored to the respective partners; and that each shall share equally in the profit and loss.

The moneys arising from sales were received by the three members first above named, (the defendant H. J. Harris acting for his wife Harriet G. Harris,) each of whom kept a cash book and entered therein the several sums received and paid out in conducting the business.

After the testator's death, his cash book was balanced by said H. J. Harris as of June preceding, and showed the testator's indebtedness to the firm to be $1,851.25.

There are also balances in different sums against the two survivors on their respective cash books, and besides these, there are accounts against the partners for goods and mer-

chandise on the books of the firm. There has never been an adjustment of partnership matters, nor any distribution of profits.

The business of the firm was the manufacture and sale of shoes in one house and general merchandise in the other.

In one of the houses was an iron safe in which were two locked drawers, the key opening one of which was kept by the testator, and the key of the other by the agent, H. J. Harris. In the drawer kept by the testator was found, after his death, in money the sum of $1,851.25, and at his house about $50. The testator commonly placed his own individual money in the drawer and deposited therein about $45 about two months prior to his death in an envelope. The moneys of the firm collected by H. J. Harris were kept in the drawer of which he had the key, and those collected by George Lines in his pocket. The several cash books were open to the inspection of all the members, and the firm owed no debts.

There was no express agreement that the testator nor any other member should withdraw any of the partnership assets, nor were any withdrawn by either of them. The sum found in the testator's drawer belonged to the firm.

Besides the personal the firm owned real estate in the town of Thomasville, known as the "store" and the "shoe manufactory" with the machinery and fixtures used with the latter.

The questions propounded by the executor and arising out of the contentions in the answers are these:

1. Does the legatee and devisee Anna Lines take one-third part of the testator's entire interest in the partnership property, the accumulations as well as the original capital put in, except as reserved in the will, or only one-third of the latter sum?

2. Are the legacies of $100 to Anna Coltrain and of $50 to Mahala Marshall to be taken out of the partnership prop-

erty before the said Anna Lines' share is withdrawn, or out of the remaining two-thirds?

3.. What property is embraced in the gift of "the residue of my (his) capital invested in the firm of C. M. & G. Lines, after paying my (his) individual debts, and funeral and burying expenses," and is the money found in the drawer a part of the capital?

4. Does the crop growing on the Dodson farm at the time of the testator's death belong to the said Anna, the devisee of the land?

5. Does the crop on the tract of twenty-four acres devised to Minnie R. Lines pass with the land to her, or does it vest in the said Anna, or in the executor?

6. Are the proceeds which may be derived from the sale of the Dodson farm, after the expiration of the life estate, and which the testator directs "to be equally divided between the children of my (his) deceased sons Charles L. and Royal J. Lines" to be divided *per capita* or *per stirpes?*

Upon the trial before the court two exceptions were taken on behalf of the defendant Harriet G. to the rejection of evidence offered which are necessary to be considered before entering upon the enquiry as to the legal import and operation of the clauses of the will out of which the conflicting claims arise.

I. In support of a construction favorable to the legatee, she proposed to introduce a memorandum of a declaration made by the testator to the witness his executor, intermediate between the making of the will and his death, written down at the time by the latter and read over to and approved by the former, which is in these words:

THOMASVILLE. N. C., May 26, 1877.

*A Statement of C. M. Lines to R. W. Thomas.*

"It is our custom on the first of the year to take an inventory to see how the firm stood, which at the last taking

showed there was due me $3,000 on hand to my credit, of my own individual property. It was charged to me in cash book, which made it mine; or in other words it went to make up the balance against me in my cash account. I have made the statement to you to prevent the loss of that amount to my estate. I have received some since that time and have paid out some more than I have received, which will — the $3,000."

The declarations of the testator are admissible as evidence of facts upon which the will is to operate, as would be any other competent testimony to the same effect, and to fit the words of the will to their appropriate and intended objects. But no evidence of the kind will be heard to show an intent modified and different from that expressed in the instrument itself. To permit this would be to break down the safe-guards provided in the statute of frauds and subvert the well settled rule that a written instrument, disposing of property or constituting a contract, cannot be altered, impaired or explained by parol proof of a different purpose or understanding from that contained in the writing. The memorial of the declarations of the testator after making his will, although giving greater assurance of accuracy that when reproduced from an unaided memory, is of no higher grade and is equally inadmissible. The declarations were offered to show the testator's own subsequent interpretations of his will in restricting its operative words so as to exclude the money found in the drawer from the bequest of the capital invested in the partnership, and for such purpose they are entirely inadmissible. *Donaldson* v. *Benton*, 4 Dev. & Bat., 435; *Reynolds* v. *Magness*, 2 Ired., 26; *Miller* v. *Derr*, 69 N. C., 137. "The intent is to be gathered from the will only." O'Hara Const. Wills, 30; *Hester* v. *Hester*, 2 Ired. Eq:,•330.

II. It was also proposed to prove a tacit understanding

among the partners that each might take and use the funds collected for his personal benefit, notwithstanding the partnership articles.    The evidence was disallowed as contravening the agreement on which the firm was formed, and tending to modify and impeach its terms.    While undoubtedly the articles may be modified by a subsequent arrangement among the members, a disregard of their obligations, while subsisting in full force, by one or more, cannot be allowed to have such effect.    The testimony was properly rejected.

These exceptions being removed, we proceed to consider the difficulties suggested in the questions relating to the construction of the will.

1. The accumulated earnings of the firm which remain invested in its business, equally with the sums first put in, constitute its enlarged capital and become the basis of its extended operations, and from this aggregate amount to which the testator would be entitled upon a settlement, his widow is entitled to one-third part.    The testator makes no distinction between the primary fund and its accretions, all of which is his "capital invested in the firm of C. M. & G. Lines," and subject to the specified deductions, given to the said Anna and to his daughter Harriet G. and the children · of his deceased sons Charles L. and Royal J. Lines, in the proportion and on the terms annexed to the respective legacies.   ·

Capital is defined by Webster as "a stock employed in trade, manufactures, &c.," by Worcester, "the stock invested in any business, company or institution," and by Bouvier in his law dictionary, "money or other property, which a merchant trader, or other person, adventures in an undertaking or which he contributes to the common stock of a copartnership," and in this general sense the word is used by the testator.                    ·

2. The legacies to Anna Coltrain and Mahala Marshall

must be taken from the remaining two-thirds of the capital after the withdrawal of the share of the said Anna.

3. The money discovered in the drawer, the key to which the testator kept, corresponding precisely with the balance charged against him in his cash book, is found by the court to be the property of the firm, and the accompanying facts do not warrant the inference of an intended or actual appropriation of the sum to his own separate use. This would involve a breach of partnership obligation and the intention to do this cannot be drawn from its place of temporary deposit, with the explanations of the manner in which the partners were accustomed to act in receiving and disposing of the moneys of the firm. The sum must then be deemed part of its assets and of the "*capital*" disposed of in the will.

4. The growing crop on the Dodson farm is given to the devisee of the land for life, in express words of description, " with all the growing crops on the farm," by which the testator's intent is manifest and controls the statute. Bat. Rev., ch. 45, § 31.

5. The devise of the twenty-four acre tract bought of L. L. Thomas, does not convey with it the crop growing thereon, to the devisee Minnie R., but it vests in the executor by force of the said statute.

6. The moneys arising from the sale of the Dodson farm after the death of the life tenant must be distributed equally among the children of Charles L. and Royal J. Lines, to-wit, one-fourth to the personal representatives of Minnie R., since deceased, and only child of Royal J. Lines, and one-fourth to Alice Elmore, Mary Lines and Sallie Lines, each children of Charles M. Lines. *Cheeves* v. *Bell*, 1 Jones Eq., 234; *Lane* v. *Lane*, 1 Winst. Eq., 84; *Waller* v. *Forsythe*, Phil. Eq., 353.

7. The machinery used in the shoe manufactory as well as the buildings belonging to the firm, are embraced in the words " the residue of my capital invested in the firm of C.

M. & G. Lines," and after the deduction for " debts and fu-
neral and burying expenses," are devised and given in three
equal parts, one to the defendant Harriet G., one to the
three children collectively of Charles L., and the remaining
third to Minnie R., the only child of Royal J., which by
her death vests in her representatives and heirs at law.

The rulings of His Honor are in accordance with this
opinion as to the construction and operation of the will,
and are therefore affirmed. By consent of parties in the
court below the costs of the action were adjudged to be paid
by the executor out of the assets of the estate, and this judg-
ment will not be disturbed. The costs incurred by the ap-
peal to this court must be paid by the appellant. A decree
may be drawn in conformity with this opinion, and the
clerk will certify the same to the superior court of David-
son to the end that further proceedings be had therein ac-
cording to law.

. No error.                                        Affirmed.