WARREN REDD, JANE REDD AND CHARLES J. HENDERSON, CO-EXECUTORS OF THE ESTATE OF BESSIE FLOWE REDD, DECEASED. PLAINTIFFS, v. THEODOCIA TAYLOR; QUEENS COLLEGE, INCORPORATED, A CORPORATION; BARIUM SPRINGS HOME FOR CHILDREN, INC., A CORPORATION; DOLPHUS ORR, JR.; DIVISION OF WORLD MISSIONS OF THE BOARD OF MISSIONS OF THE METHODIST CHURCH, A CORPORATION; BOARD OF WORLD MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES, A CORPORATION; JACK N. NORWOOD, ONE OF A CLASS COMPOSING ALL OF THE NEXT OF KIN AND HEIRS AT LAW OF BESSIE FLOWE REDD, DECEASED; JAMES H. CARSON, JR., GUARDIAN AD LITEM FOR ANY PERSON, PERSONS, FIRMS, OR CORPORATIONS FORMED OR UNFORMED, DESIGNATED OR MAKING ANY CLAIMS TO THE ESTATE OF BESSIE FLOWE REDD, DECEASED, UNDER THE NAME "WORLD MISSIONS"; LLOYD F. BAUCOM, GUARDIAN AD LITEM OF ANY UNKNOWN OR UNBORN HEIRS AT LAW, OR MINORS, OR ANY UNKNOWN PERSON OR PERSONS NON COMPOS MENTIS, OR IMPRISONED, OR RESIDING OUTSIDE THE STATE OF NORTH CAROLINA, OR OTHERWISE UNDER LEGAL DISABILITY, CLAIMING AS NEXT OF KIN AND HEIRS AT LAW OF BESSIE FLOWE REDD, DECEASED; ORIGINAL DEFENDANTS, AND WARREN REDD AND JANE REDD, ADDITIONAL DEFENDANTS.

(Filed 12 April, 1967.)

1. Wills § 27—

Where the words of a will are plain and intelligible but ambiguity arises in its designation of a beneficiary in one clause and the particular property intended to be devised in another, the ambiguities are latent and evidence *de hors* the instrument is competent to ascertain the intent of testatrix, and when such evidence clarifies testatrix' intent the provisions of the will will not be declared void for uncertainty.

2. Wills § 50—

Testatrix devised and bequeathed property to "World Missions." The Division of World Missions of the Board of Missions of ˙the Methodist

Church, Inc., and the Board of World Missions of the Presbyterian Church in the United States, Inc., claimed to be the beneficiary. The evidence tended to show that testatrix was a lifelong and devout Presbyterian, and that the agency for the Board of World Missions of the Presbyterian Church was commonly referred to as "World Missions" and was so denominated in the Church bulletin and on envelopes provided for donations. *Held:* The latent ambiguity is resolved by the competent evidence *de hors* the instrument, and the agency of testatrix' denomination takes the property.

**3. Wills § 55—   Evidence held to make certain the boundaries of that part of a larger tract of land which testatrix intended to devise to claimants.**

The will provided that named beneficiaries were to have "the part of the farm on the Albemarle Road that they wanted in fee simple. The rest of the farm to go with the rest of my estate." The evidence disclosed that testatrix had leased a part of the farm to the beneficiaries for a number of years, that on several occasions the beneficiaries had asked testatrix to sell them the part that they had leased, and that testatrix had declared to third persons that she would not sell such part to the beneficiaries but that "they will get it." *Held:* It is apparent from the will that testatrix did not intend to devise to the beneficiaries the entire tract, and that the will referred to the land that the beneficiaries wanted at the time the will was written and not to land which they might desire after her death, and the beneficiaries take only that part of the tract described in the lease.

APPEAL by Jack N. Norwood, one of the class composing the next of kin and heirs at law of Bessie Flowe Redd, deceased; Lloyd F. Baucom, guardian *ad litem* for all persons under legal disability and for any unknown or unborn persons "claiming as next of kin and heirs at law of Bessie Flowe Redd"; and additional defendants Warren Redd and Jane Redd, as individuals, from *Brock, S.J.,* June 13, 1966 Schedule "C" Civil Session of Mecklenburg. This appeal was docketed in the Supreme Court as Case No. 292 and argued at the Fall Term 1966.

Action for a declaratory judgment brought by the executors for construction of the will of Bessie Flowe Redd (Mrs. Redd, or testatrix).

Testatrix, a resident of Mecklenburg County, died on December 21, 1962, leaving between 55-70 persons as her heirs at law. Her husband, Judge F. M. Redd, had predeceased her in 1956, and no parent, child, or other lineal descendant survived her. Her holographic will, executed on May 31, 1953 — republished by a first codicil dated February 2, 1956, a second undated codicil, and a third codicil dated October 3, 1962 — was probated on December 28, 1962. The will and codicils are as follows:

"Page 1/             May 30, 1953
   Last Will             February 2, 1956
     *1956*

"I Bessie Flowe Redd being of sound mind and memory do make this my last will and Testament.

"I will that my just debts be paid out of the first monies that come into the hands of my Executor hereinafter named.

"I will my farm about six miles out on the Albemarle Road to my beloved husband, F. M. Redd to be used as he desires his lifetime, at his death it is my will that it goes back to my estate.

"I will all of my personal property of every kind and description to my beloved husband F. M. Redd for his lifetime, at his death it is to go back to my estate.

"All of the remainder of my estate

(end of page 1)

2—

"I will to my beloved husband F. M. Redd during his lifetime, at his death it is my will that one half of my estate go to Barium Springs Orphanage as a Trust Fund, only the income to be used. This in memory of my beloved Father & Mother. J. Lee Flowe and Addie Belk Flowe. I will one thousand dollars to Theodocia Taylor, my maid for a number of years.

"I will two thousand dollars to Queens College Endowment Fund.

"I will one half of the remainder of my estate to establish a memorial Scholarship Fund at Queens College, one half of this fund in memory of my beloved Father & Mother—J. Lee Flowe & Addie Belk Flowe, and the other half of this fund for my beloved husband and myself—F. M. Redd (Bessie Flowe Redd) Mrs. F. M. Redd — I will the other half of the remainder of my estate to be a permanent Fund to World Missions in memory of my beloved Father & Mother, J. Lee Flowe & Addie Belk Flowe and for my beloved husband, F. M. Redd and myself (Mrs. F. M. Redd) Bessie Flowe Redd.

(end of page 2)

"(On un-numbered page) I hereby appoint my beloved husband F. M. Redd as Executor of this my last Will and Testament. It is my desire that he be not required to give bond.

(end of un-numbered page)

"Page 3/
~~give bond.~~

"If my beloved husband, F. M. Redd is not able to be my Executor I will that The Wachovia Bank & Trust Company and A. C. Cline of Concord be my Executor.

"In witness whereof I do here unto set my hand and Seal this the 31st day of May, 1953.
2nd day of February 1956 —
/s/ Bessie Flowe Redd
SEAL

"If Warren & Jane Redd take care of my beloved husband F. M. Redd and me (not to pay bills, that to come out of my estate but see .that we are properly taken care of) as long as we live, They are to have the part of the Farm on the Albemarle Road that they want in fee Simple. The rest of the farm to go with the rest of my estate.

(over)

February-2-1956
/s/ Bessie Flowe Redd
(SEAL)

(back of page 3)
"I wish Charles J. Henderson and Wachovia Bank to be my
+ Warren Redd
Executors —
(Mrs. F. M.) /s/ Bessie Flowe Redd
(SEAL)

"I wish Charles J. Henderson, Warren & Jane Redd to be my Executors.
October 3, 1962
(Mrs. F. M.) Bessie Flowe Redd
(SEAL)
"Witness — /s/ Lydia E. Crane."

Charles J. Henderson, Warren and Jane Redd, the executors named in the last codicil, duly qualified and are performing the duties of the office. On March 4, 1964, Warren and Jane Redd notified their co-executor that they had met the conditions imposed upon them in the first codicil to Mrs. Redd's will and that they elected to take *all* of the 108.2-acre farm on Albemarle Road. The

executors, being uncertain what interest in the farm, if any, the Redds took under the will and whether the bequest to World Missions referred to the Division of World Missions of the Board of Missions of the Methodist Church, the Board of World Missions of the Presbyterian Church in the United States, or to some other organization, brought this action to have the court determine these and any other questions of construction arising under the will of Mrs. Redd. All individuals and organizations named in the will were made parties defendant, Warren and Jane Redd, as individuals, being made additional parties defendant. Division of World Missions of the Board of Missions of the Methodist Church, Inc. (Methodist World Missions) and Board of World Missions of the Presbyterian Church in the United States, Inc. (Presbyterian World Missions) were both made defendants.

When the case came on for trial, all parties waived a jury trial and agreed that Judge Brock might determine all issues "related to law or facts" arising in the action. They further stipulated, *inter alia,* that the references in the will to Queens College and Queens College Endowment Fund relate to Queens College, Inc., and that references to Barium Springs Orphanage pertain to Barium Springs Home for Children, Inc. All parties except defendants Taylor, Orr, and Carson, guardian *ad litem,* offered evidence which was without material conflict. It disclosed the following:

Mrs. Redd, the daughter of two Presbyterians, was a lifelong Presbyterian. She graduated from Queens College, a Presbyterian school, in 1919. Shortly thereafter, she married F. M. Redd, who became a Presbyterian with her. She had two uncles and two first cousins who were Presbyterian ministers. One of the uncles went to Brazil as a missionary; a cousin was also a missionary. Unless prevented by her husband's illness or her own, Mrs. Redd regularly attended the Presbyterian Church of which she was a member. Over 69% of her recorded donations to all causes went to the Covenant Presbyterian Church of Charlotte, to which she gave $1,636.00 during the last two years of her life. Her records disclose no gifts to any churches other than Presbyterian. She belonged to a Presbyterian Church circle, an organization of Presbyterian women.

Prior to October 11, 1949, the missionary work of the Presbyterian Church was conducted by an organization known as the Executive Committee on Foreign Missions. On that date, the name was changed to Board of World Missions of the Presbyterian Church in the United States. Thereafter, except in formal writings, the organization was referred to, "in the language of Presbyterians,"

as World Missions. It was thus denominated in the church bulletins and on the envelopes provided for donations to be used in the church's missionary activities. The church observed a "World Mission Season," and a "week of prayer and self denial for World Missions." Approximately 50% of the total budget of the Presbyterian Church is for the Board of World Missions, actively promoted after 1949 under the name of World Missions.

Mrs. Redd's gross estate was tentatively valued for federal estate tax purposes at $392,662.85. Among her holdings was a 108.2-acre farm on Albemarle Road, which she had inherited from her father. It was appraised at $198,158.00 on October 17, 1963. Warren Redd, the nephew of testatrix' husband, owns land adjoining the southern line of this tract of land. Warren's parents died when he was a child and Judge Redd educated him. Until his marriage in 1938, Warren was in the home of testatrix and her husband, Judge Redd, every day. Thereafter, they continued a very close association. After her husband's death, Warren and Jane Redd stayed with her for several months in an effort to help her adjust to his passing. Although Mrs. Redd had no financial worries, she became increasingly concerned about having someone to turn to if she became ill or helpless. On one occasion, Mrs. Redd told a neighbor and close friend that she was leaving her property only to Barium Springs Orphanage, Queens College, World Missions, Docie (Theodocia Taylor), and Warren Redd.

In 1950, Warren started Greenway Nursery, a corporation in which he was an officer. On behalf of the corporation, he leased 19-25 acres of the Albemarle Road farm from Mrs. Redd. The written lease described the property by metes and bounds as "29.15 acres more or less," less certain areas containing 10 acres more or less. The term of the lease was for five years from March 1, 1951; the rental, $225.00 a year. On March 1, 1960, a similar lease for six years was executed. Mrs. Redd also gave Warren Redd oral permission to use a barn and pasture for a mule. At the time of the execution of the second codicil, Warren Redd owned all the stock in Greenway Nursery.

Over the objection of defendants Warren and Jane Redd, Dr. Harry H. Bryan, a Presbyterian minister, was permitted to testify that after 1957 Mrs. Redd had told him several times that Warren and Jane Redd had asked her to sell to them that part of the land which they were leasing. "She said . . . 'they were here yesterday or today, asking me to sell the part of the nursery they were using . . . they want to buy the part they are renting . . . I do not want to sell it at this time; they will get it.' " Similar testimony

was elicited, over objection by the Redds, from A. C. Cline, who had been named co-executor with Wachovia Bank & Trust Company in the will of May 31, 1953. He testified that Mrs. Redd had told him at least a dozen times that Warren wanted to buy that part of the farm which he was leasing for the nursery, but that she would not sell; that, instead, she had decided to leave it to him if he looked after her and Mr. Redd and took care of their needs, other than financial, when they were old. On one of these occasions, she and Mr. Cline had gone out to the farm and actually looked at the part which Warren was leasing. Mrs. Redd "got out the pieces of paper on which she had written her will and read them over" to Mr. and Mrs. Cline.

On cross-examination by counsel for defendant Norwood, Dr. Bryan testified, without objection by any party, as follows:

"I had more than one conversation with her with reference to the farm and Warren' and Jane — she would mention it whenever this matter came up in the family conversation. I do not recall the exact instances or circumstances. She stated they wanted to buy the part of the farm that they had leased for a nursery and that she had refused to sell it to them, but that they would get it later."

Judge Brock made detailed findings of fact, which can be summarized as follows:

(1) The dispositive provisions of Mrs. Redd's will and the donations which she made during her lifetime showed her intention to benefit Presbyterian projects, and, in so doing, to establish memorials to her parents, her husband and herself. She intended the bequest to World Missions as a bequest to Board of World Missions of the Presbyterian Church in the United States.

(2) Warren and Jane Redd had attempted to purchase from Mrs. Redd the portion of her Albemarle Road farm which they had leased from her since February 26, 1951; that she had refused to sell the land to them and had decided to leave it to them if they continued to take care of her and her husband as long as they lived; that Warren and Jane Redd satisfied these "care" requirements; that the devise to them in the February 2, 1956 codicil of "the part of the farm on the Albemarle Road that they want in fee simple" referred to the land described in the two written leases from Mrs. Redd to Greenway Nursery, Inc.

The court adjudged:

(1) Warren and Jane Redd are the owners of that portion of Mrs. Redd's Albemarle Road Farm described in the leases from her to Greenway Nursery.

(2)  One-half of the remainder of the estate belongs to Barium Springs Home for Children, Inc., to be held in trust by that institution as a memorial to testatrix' parents and the income therefrom to be used for institutional purposes.

(3)  The remaining one-half of the estate shall be divided and distributed as follows: First, $1,000.00 shall be paid to Theodocia Taylor and $2,000.00 to Queens College, Inc., to be held as a part of the endowment fund of that institution. The balance left shall then be divided into two parts — one part to go to Queens College, Inc., as an addition to its memorial scholarship fund; the other part to the Board of World Missions of the Presbyterian Church in the United States to be held by that organization and the income expended to promote Protestant World Missions. These charitable bequests are to be held and designated as a memorial to the persons named in the will. The judgment further designated the funds from which the cost of administration, taxes, and other liability should be paid.

Warren and Jane Redd, individually, Jack N. Norwood, and Lloyd F. Baucom, guardian *ad litem,* each excepted to the findings of fact and conclusions of law adverse to him, and each appealed.

*Ray Rankin and Henry E. Fisher for Jack N. Norwood, defendant appellant.*

*Lloyd F. Baucom, Guardian ad litem, defendant appellant.*

*Boyle, Alexander and Carmichael for Warren Redd and Jane Redd, additional defendant appellants.*

*Helms, Mulliss, McMillan & Johnston for Board of World Missions of the Presbyterian Church in the United States, defendant appellee.*

*Ervin, Horack, Snepp & McCartha for Queens College, Inc., defendant appellee.*

*W. R. Pope for Barium Springs Home for Children, Inc., defendant appellee.*

SHARP, J.  Appellants Jack N. Norwood, as the representative of the heirs at law of Mrs. Redd, and Lloyd F. Baucom, guardian *ad litem* for her unknown heirs, contend that both the devise to Warren and Jane Redd and the gift to World Missions are void "for indefiniteness and ambiguity"; that parol evidence is inadmissible to effect identification; and that these purported gifts pass as undevised property to Mrs. Redd's heirs at law. Appellants Warren and Jane Redd contend that no ambiguity exists in the devise to them; that it gave them the right to take any part or all of the

farm on Albemarle Road; and that the court erred in admitting evidence which contradicted the plain terms of the will. None of these contentions can be sustained.

Mrs. Redd's gift to "World Missions" and her devise to Warren and Jane Redd of "the part of the farm on Albemarle Road that they want in fee simple" created latent ambiguities, which could be removed by parol testimony.

A latent ambiguity occurs when the words of an instrument are plain and intelligible, but extrinsic facts are necessary to identify the person or thing mentioned therein. A latent ambiguity, therefore, presents a question of identity — a fitting of the description in the will to the person or thing the testator intended. As Pearson, J. (later C.J.), said in *Institute v. Norwood,* 45 N.C. 65, 68, "(I)n cases of *latent* ambiguity, evidence *dehors* is not only competent, but *necessary.* . . . for how can any instrument identify a person or thing? It can describe, but the identification, the fitting of the description, can only be done by evidence *dehors.*" *Accord, McDaniel v. King,* 90 N.C. 597; *Kincaid v. Lowe,* 62 N.C. 42; Note, 35 N.C.L. Rev. 167 (1956); 95 C.J.S., Wills § 636 (1957); See *Trust Co. v. Wolfe,* 243 N.C. 469, 91 S.E. 2d 246.

In the bequest or devise to World Missions, testatrix was obviously using a proper name and was designating a particular organization as the object of her bounty. Here, the capitalization negates any idea that she was merely stating a purpose to aid world missions, or foreign missions, in general. *Bridges v. Pleasants,* 39 N.C. 26. When both Division of World Missions of the Board of Missions of the Methodist Church, Inc., and Board of World Missions of the Presbyterian Church in the United States, Inc., claimed to be the designated beneficiary, the executors were confronted with one of the classic examples of a latent ambiguity — the situation in which two "persons allege themselves to be the identical A. B. meant by the testator, or, as is said in the books, as if there be two 'Cousin Johns.'" *Institute v. Norwood, supra* at 70.

In *McLeod v. Jones,* 159 N.C. 74, 74 S.E. 733, testator devised one-third of his residuary estate to Home Missions of the Baptist denomination, one-third to Foreign Missions of the Baptist denomination, and one-third to Thomasville Orphanage. On consideration of the facts in evidence, the habits and customs of the testator, his church affiliation, and *his direct declarations,* the jury found that the intended donees were the Home Mission Board of the Southern Baptist Convention, the Foreign Mission Board of the Southern Baptist Convention, and the trustees of the Thomasville Baptist

Orphanage, and the judgment so decreed. In affirming his judgment this court said:

> "Under our decisions, the facts in evidence present an instance of a latent ambiguity, requiring and permitting the reception of extrinsic evidence; not to alter or affect the construction, but to apply the description to the intended donee, as designated by the language appearing in the will. . . . And in such case and for such purpose, authority here and elsewhere is to the effect that the surrounding circumstances as well as the declarations of the testator are relevant to the inquiry, and especially where, as in this case, they were made at the time the will was executed." *Id.* at 76, 74 S.E. at 734.

*Accord, Thomas v. Summers,* 189 N.C. 74, 126 S.E. 105; *Fulwood v. Fulwood,* 161 N.C. 601, 77 S.E. 763. Annot., Admissibility of extrinsic evidence to aid interpretation of will, 94 A.L.R. 26, 275. See *Thomas v. Lines,* 83 N.C. 191, 197. Declarations of intent by a testator, of course, are not admissible to control the construction of his will or to vary, contradict, or add to its terms. *Holmes v. York,* 203 N.C. 709, 166 S.E. 889; *Reynolds v. Trust Co.,* 201 N.C. 267, 159 S.E. 416; *McDaniel v. King, supra;* Annot., 94 A.L.R. 26, 272.

The "circumstances attendant" when Mrs. Redd wrote her will (see *Trust Co. v. Wolfe,* 245 N.C. 535, 540, 96 S.E. 2d 690, 694) — the evidence with reference to her church affiliation, her loyalty to the Presbyterian faith, and her customs —, and her oral declarations lead to the inescapable conclusion that her intended beneficiary was Presbyterian World Missions. The words of Pearson, J. (later C.J.), in *Institute v. Norwood, supra* at 75, are again well applicable to this case: "The rules of law as well as of good sense forbid that the charitable intention of the testator should be defeated because (she) did not (use) the precise name of the corporation, and had fallen into the common practice of calling it by a *short name.*" In *Norwood,* a bequest to the *Deaf and Dumb Institution* was held to be a case of latent ambiguity and "the President and Directors of the North Carolina Institute for the education of the Deaf and Dumb" was identified as the taker of the legacy.

In the gift to "World Missions," the latent ambiguity related to the identity of the donee; in the devise to Warren and Jane Redd, it pertains to the identity of the property devised. The dispositive provision is: "They are to have the part of the farm on Albemarle Road that they want in fee simple." It is clear to us that, by the use of this language, Mrs. Redd did not intend to give Warren and Jane Redd the whole of Albemarle Road farm in the event they

should declare that they wanted it. She could safely assume that, if by wanting it they could have it, they would want the 108 acres of land adjacent to or just inside the city limits of Charlotte, a property conservatively valued at $198,158.00. Had she intended for them to have the entire farm, she would have said so. The words of the devise deny a gift of the whole; they speak also in the present tense, as of the date Mrs. Redd wrote the codicil. She said, "the part . . . that they want" — not *"such part as they may want or choose."* Her reference was to land that they then wanted and not land which they might desire after her death. Furthermore, this devise concludes with the words: *"The rest* of the farm to go with the rest of my estate." (Italics ours.)

Testatrix' intention to give Warren and Jane Redd a certain, definite portion of the farm, the boundaries of which she and they both knew, is plain. This provision is not analogous to the devise of 25 undesignated acres out of a larger tract of 82 acres, which was held void for indefiniteness of description in *Hodges v. Stewart,* 218 N.C. 290, 10 S.E. 2d 723. The executors' problem here was simply to identify the particular part of the Albemarle Road farm which Warren and Jane Redd had indicated to testatrix, prior to February 2, 1956, that they wanted. *Trust Co. v. Dodson,* 260 N.C. 22, 131 S.E. 2d 875; 4 Strong, N. C. Index, Wills § 28 (1961). The problem is no different from the one created by a devise of "the Linebarger plantation" (*Kincaid v. Lowe, supra*), "the homestead tracts" (*Fulwood v. Fulwood, supra*), "My homeplace on McIver Street" *(Thomas v. Summers, supra).* In *Kincaid v. Lowe, supra* at 42, Battle, J., said: "This is a plain case of *latent* ambiguity, as to which it is equally *plain* that it may be removed by parol testimony." The devises in *Kincaid, Fulwood,* and *Thomas,* and in the instant case, were of specified tracts of land; the question: Can it be identified and, if so, what land was meant? The description of the property in each of those cases — and in this one — was sufficiently definite to permit its *identification* by parol evidence, including the declarations of the testator. *Thomas v. Summers, supra; Fulwood v. Fulwood, supra; McLeod v. Jones, supra;* Annot., 94 A.L.R. at 75; 95 C.J.S., Wills § 637 (1957); 4 Wigmore, Evidence § 2472 (3d Ed., 1940). Parol evidence of testatrix' declarations that the Redds had sought to buy the land they had leased from her since 1951 was sufficient and competent to identify it as the land they wanted when she wrote the codicil. The written lease established its boundaries by metes and bounds.

Judge Brock's findings of fact are all based on competent evidence and support his conclusions of law. In our opinion, the judge

correctly construed the will and ascertained the actual intention of testatrix.

The judgment of the court below is, in all respects,

Affirmed.