BLANCHE LOUISE HARTMAN BRITT v. YVONNE G. UPCHURCH

No. 551PA89

(Filed 3 October 1990)

1. **Wills §§ 28.4, 56 (NCI3d) — devise of residence — inclusion of adjoining lot — latent ambiguity**

A devise of "my residence at 2615 Cooleemee Street" created a latent ambiguity as to whether the description re-

ferred only to the lot on which testator's house was located or included an adjoining lot so that extrinsic evidence was admissible to ascertain testator's intent.

**Am Jur 2d, Wills §§ 1281, 1282, 1331, 1349.**

2. **Wills § 28.4 (NCI3d)— latent ambiguity—testator's direct declarations of intent—inadmissibility of attorney's affidavit**

A testator's direct declarations of intent as to which particular beneficiary will receive each parcel of land are not admissible to remove a latent ambiguity. Therefore, an affidavit of the attorney who drafted testator's will containing the attorney's impressions as to testator's intent concerning who was to receive a lot adjoining the lot on which testator's house was located was not admissible on the issue of what was meant by a devise of "my residence at 2615 Cooleemee Street."

**Am Jur 2d, Wills §§ 1281, 1282, 1331, 1349.**

3. **Wills § 56 (NCI3d)— devise of residence—inclusion of adjoining lot—summary judgment**

Plaintiff's forecast of evidence showed that testator's family used both lot 36, on which their house was located, and adjoining lot 37 as their "residence" and that testator's devise of "my residence at 2615 Cooleemee Street" thus referred to both lots 36 and 37 where plaintiff presented evidence that at the time testator purchased the house on lot 36, testator's mother purchased lot 37 on testator's behalf; testator's family cleared lot 37 and landscaped it; testator built a garage on lot 37 and partially paved a driveway from the garage across lot 36 to the street; testator built a tool shed on lot 37 and used it to park the family's second car; testator built a concrete sidewalk from the house on lot 36 to the garage on lot 37; and the family dog was housed in a pen constructed on lot 37. Defendant's forecast of evidence that lots 36 and 37 were purchased at different times, were listed separately on the tax records, and had different street addresses was insufficient to raise a genuine issue of material fact as to whether testator considered "my residence at 2615 Cooleemee Street" to include both lots 36 and 37, and the trial judge was correct in granting

plaintiff's motion for summary judgment declaring her the owner of both lots 36 and 37.

**Am Jur 2d, Summary Judgment § 10.**

ON discretionary review of the decision of the Court of Appeals, 96 N.C. App. 257, 385 S.E.2d 366 (1989), reversing a judgment entered by *Bailey, J.,* in the Superior Court, WAKE County, 8 February 1989, and remanding the action for trial. Heard in the Supreme Court 16 May 1990.

*Nichols, Miller & Sigmon, P.A., by R. Bradley Miller, for plaintiff-appellee.*

*Merriman, Nicholls & Crampton, P.A., by William W. Merriman, III, and Elizabeth Anania, for defendant-appellant.*

FRYE, Justice.

The issues presented in this appeal are whether the Court of Appeals erred (1) in holding that the affidavit of the attorney who drafted the testator's will was admissible at trial to show the testator's intent; and (2) in reversing the trial court's grant of summary judgment for plaintiff. We conclude that the trial court was correct in refusing to consider the affidavit and in granting summary judgment for plaintiff. We therefore reverse the decision of the Court of Appeals.

Walter Hartman, the father of plaintiff, executed his will on 12 March 1979. At that time Mr. Hartman was married to Ada Cassie Hartman, his second wife, who was the mother of the defendant in this action. Mr. Hartman's will provided in Article IV: "I give, devise and bequeath unto my said wife my residence at 2615 Cooleeme (sic) Street, Raleigh, North Carolina, for the term of her natural life. I give and devise the remainder interest in said property to my daughter, BLANCHE LOUISE HARTMAN BRITT." Article VIII, the residuary clause of the will, provided: "All of the remainder and residue of my property, I give, devise, and bequeath to my wife, ADA CASSIE HARTMAN in fee simple. If my wife shall predecease me, I give, devise and bequeath said residue to my daughter BLANCHE HARTMAN BRITT."

At the time of his death, Mr. Hartman was living in the same home he had lived in since he purchased it in 1948. The house itself is located on lot 36 which is shown on the county tax records

as 2615 Cooleemee Street. At the same time Mr. Hartman purchased lot 36, his mother purchased the adjoining lot 37, a vacant lot which is shown on the tax records as 2613 Cooleemee Street. Mr. Hartman's mother conveyed lot 37 to him by deed in 1956. Thus, at the time of execution of the will and at the time of his death, Mr. Hartman owned lots 36 and 37.

Mr. Hartman died on 24 February 1983, and Ada Cassie Hartman, his widow, died on 5 April 1988. Ms. Hartman's will provided in Article III: "I give and bequeath to my daughter, Yvonne G. Upchurch, all my personal and real property." Yvonne G. Upchurch, the defendant, attempted to sell lot 37, claiming title to lot 37 under her mother's will, contending that it passed to her mother under the residuary clause of Mr. Hartman's will.

On 6 October 1988, plaintiff brought this action in the Superior Court of Wake County to quiet title to lot 37. Plaintiff claimed title to lot 37 under Article IV of her father's will. On 1 November 1988, plaintiff filed a motion in limine to exclude any evidence, oral or written, of Thomas F. Adams, Jr., regarding Mr. Hartman's testamentary intent. Thomas F. Adams, Jr., was the attorney who drafted Mr. Hartman's will. On 13 January 1989, the trial judge granted the motion. On that same day, defendant moved for summary judgment. In support of this motion, defendant filed copies of the deeds to lots 36 and 37 as well as affidavits from employees of the tax offices of both the City of Raleigh and Wake County showing that lots 36 and 37 were listed separately in the tax records in both offices, lot 36 as a vacant lot identified as 2613 Cooleemee Street and lot 37 as a house and lot identified as 2615 Cooleemee Street. Plaintiff filed her own affidavit in opposition to defendant's motion for summary judgment, and on 8 February 1989 the trial judge granted plaintiff's motion for summary judgment, declaring her to be the owner of lots 36 and 37.

[1] Defendant appealed to the Court of Appeals, both from the order granting summary judgment in favor of plaintiff and from the order excluding evidence from Mr. Adams concerning Mr. Hartman's testamentary intent. The Court of Appeals held that the description of the property in the will, "my residence at 2615 Cooleemee Street," created a latent ambiguity and that extrinsic evidence, including an affidavit signed by Mr. Adams, was admissible to show Mr. Hartman's intent when he executed the will. *Britt v. Upchurch*, 96 N.C. App. 257, 260, 385 S.E.2d 366, 368

BRITT v. UPCHURCH

[327 N.C. 454 (1990)]

(1989). The Court of Appeals further held that since the evidence in Mr. Adams' affidavit was admissible, and since plaintiff's affidavit presented evidence of contrary intent, material issues of fact were presented, and summary judgment was inappropriate. *Id.*

We agree with the Court of Appeals that the description of the property in the will creates a latent ambiguity and that extrinsic evidence is admissible in order to ascertain the testator's intent. We do not agree that Mr. Adams' affidavit should be admitted as evidence of Mr. Hartman's intent.

The general rule in North Carolina is that a latent ambiguity presents a question of identity and that extrinsic evidence may be admitted to help identify the person or the thing to which the will refers. *Redd v. Taylor*, 270 N.C. 14, 22, 153 S.E.2d 761, 766 (1967). This extrinsic evidence is admissible "to identify a person or thing mentioned therein." *Id.* This evidence is not admissible "to alter or affect the construction" of the will. *Id.* at 23, 153 S.E.2d at 767 (quoting *McLeod v. Jones*, 159 N.C. 74, 76, 74 S.E. 733, 734 (1912) ). "Surrounding circumstances as well as the declarations of the testator are relevant to the inquiry." *Id.* "Surrounding circumstances" do not refer to the intent of the testator, rather these circumstances mean the "*facts* of which the testator *had knowledge* when she made her will." *Wachovia Bank and Trust Co. v. Wolfe*, 245 N.C. 535, 540, 96 S.E.2d 690, 694 (1957) (emphases in the original). "Declarations of *intent* by a testator . . . are not admissible to control the construction of his will or to vary, contradict, or add to its terms." *Redd v. Taylor*, 270 N.C. at 23, 153 S.E.2d at 767 (emphasis added). *See also Holmes v. York*, 203 N.C. 709, 166 S.E. 889 (1932) (objection properly sustained to proffered testimony of witness that testatrix "told him she did not intend the land to go to O.C. York under her will," *id.* at 711, 166 S.E. at 890); and *Reynolds v. Trust Co.*, 201 N.C. 267, 159 S.E. 416 (1931) (objection properly sustained to deposition testimony of attorney that "[w]ill as drafted by me was drawn strictly in accordance with [testator's] instructions, and I recall very clearly that we discussed the difference between the two paragraphs mentioned," *id.* at 277, 159 S.E. at 420).

The reasoning behind these rules is succinctly stated in *Thomas v. Houston*, 181 N.C. 91, 106 S.E. 466 (1921), "[w]ills are made by testators, not by witnesses." *Id.* at 94, 106 S.E. at 468. By allowing testimony from someone else of what testator *intended*

BRITT v. UPCHURCH

[327 N.C. 454 (1990)]

to say in his will, the will could be altered, revoked or annulled by verbal testimony, and this would conflict with the requirement that wills be in writing. *In re Will of Cobb*, 271 N.C. 307, 311, 156 S.E.2d 285, 289 (1967). Allowing extrinsic evidence of what the testator said he intended to do "would open a door for frauds and perjuries of the most alarming character." *Id.* (quoting *Harrison v. Morton & Brown*, 32 Tenn. (2 Swan) 461, 469 (1852)).

In his affidavit, Mr. Adams stated:

It is my best recollection that Mr. Hartman mentioned to me on the day he came to execute his Will that he owned a vacant lot adjacent to the lot on which the residence was located.

It is also my best recollection that I suggested that the Will be redrawn to clarify that this lot was or was not deemed to be part of the lot on which his residence was located. My best recollection of his response was to the effect that he had had one or more heart attacks and was very ill; that he wanted to sign his Will without waiting for it to be rewritten; that he wanted his Wife to have the vacant lot and the residuary clause was sufficient to devise it to her; that everyone knew that it was not a part of his residence lot and had never been cleared and made a part of the yard (he said that it was covered by trees and undergrowth); and that the residence lot and the vacant lot were purchased at separate times.

This affidavit is not a factual account of what Mr. Hartman said or did which might shed light on how he used the term "my residence at 2615 Cooleemee Street." Rather, it is a statement of the attorney's "best recollections" of his suggestions to the testator and "the effect" of the testator's response. The affidavit does purport to set forth some facts of which the testator had knowledge, such as, the lot was covered by trees and undergrowth. When viewed in its entirety, however, the affidavit is, in essence, only the attorney's conclusions or impressions of what the testator meant or intended to say in his will. Such evidence is not admissible.

Defendant argues that the attorney's affidavit should be admitted in evidence because case law provides that declarations of the testator are allowed where a latent ambiguity is present. For this proposition, defendant cites *Thomas v. Summers*, 189 N.C. 74, 126 S.E. 105 (1925); *Redd v. Taylor*, 270 N.C. 14, 153 S.E.2d

761; and *Fulwood v. Fulwood*, 161 N.C. 601, 77 S.E. 763 (1913).
While defendant is correct that these cases hold that "declarations"
of the testator are admissible, the "declarations" in these cases
do not appear to be declarations of testamentary *intent*; rather
they are testator's declarations which cast light upon the testator's
usage of particular terms in the will.

In *Thomas*, the testatrix left a will devising "my home place
on McIver Street." *Thomas*, 189 N.C. at 74, 126 S.E. at 106. Evidence
was introduced which showed that at the time of her death, the
testatrix owned two adjacent lots on McIver Street which were
purchased at separate times. Lot 4 where testatrix' house was
located was purchased in October 1915, and lot 5, which was a
vacant lot adjoining lot 4, was purchased in November 1915. *Id.*
at 74-75, 126 S.E. at 106. Further evidence showed that testatrix
planted flowers on lot 5, although it had no building located on
it, and she put a fence between lot 5 and lot 6, which she once
owned but later sold. She also planted fruit trees and grapevines
on lot 5.

When plaintiffs and defendants in *Thomas* both claimed lot
5, the court allowed testimony from a witness that testatrix, before
her death, had asked the witness to build an iron fence around
lots 4 and 5. The witness was allowed to testify further that testatrix
had asked the witness three or four more times if he had put
up the fence, to which he replied that he had not been able to
get the proper materials to proceed with the construction. *Id.* at
75, 126 S.E. at 106. Further evidence was admitted that testatrix,
claiming that it was her home place, refused to sell lot 5. This
Court concluded that the language used in the will presented a
latent ambiguity and that all of the evidence discussed above was
admissible to show what the testatrix meant by the term "my
home place on McIver Street." *Id.* at 76, 126 S.E. at 107. While
in *Thomas* the Court clearly stated, "the *declarations* of the testator
at the time of making the will and at other times . . . were compe-
tent evidence," *id.* at 77, 126 S.E. at 107 (emphasis added), the
"declarations" were not direct declarations of testamentary intent;
rather, they were declarations of the testatrix which showed what
she considered to be her home place.

In *Redd*, the testatrix left a will which provided in part: "If
Warren & Jane Redd take care of my beloved husband F. M.
Redd and me . . . They are to have the part of the Farm on

**BRITT v. UPCHURCH**

[327 N.C. 454 (1990)]

the Albemarle Road that they want in fee Simple. The rest of the farm to go with the rest of my estate." *Redd*, 270 N.C. at 17, 153 S.E.2d at 763. This Court held that the devise of "the part of the Farm on Albemarle Road that they want in fee Simple" created a latent ambiguity. *Id.* at 22, 153 S.E.2d at 766.

When the Redds claimed the entire farm, the trial court admitted other claimants' evidence which showed that the Redds had sought to purchase from the testatrix the part of the farm which they leased from her for a nursery. *Id.* at 19, 153 S.E.2d at 765. The trial court also admitted evidence from witnesses that the testatrix told them that she did not want to sell the land to the Redds but that they would get it in her will. *Id.* at 20, 153 S.E.2d at 765. In its opinion, the Court did not say whether the testimony regarding the testatrix' intention to leave the property to the Redds was properly admitted. The Court held, "Parole evidence of testatrix' declarations that the Redds had sought to buy the land they had leased from her since 1951 was sufficient and competent to identify it as the land they wanted when she wrote the codicil." *Id.* at 24, 153 S.E.2d at 768. In view of the Court's earlier statement of the general rule, "[d]eclarations of intent by a testator . . . are not admissible to control the construction of his will," *id.* at 23, 153 S.E. at 767, *Redd* does not stand for the proposition that direct declarations of testamentary intent are admissible to explain a latent ambiguity.

*Fulwood* involved a will which devised "the homestead tract of land." *Fulwood*, 161 N.C. at 602, 77 S.E. at 764. This Court again found that the language of the will presented a latent ambiguity. *Id.* However, the Court did not specify which declarations of the testator were allowed to help fit the description found in the will to the land owned by the testator. *Id.* Thus, *Fulwood* only provides the statement of the general rule that declarations of the testator at the time of making the will are admissible without explaining the nature of these declarations or whether they were declarations of testamentary intent.

[2] None of the cases cited by defendant for the proposition that declarations of the testator at the time of making the will are admissible to remove a latent ambiguity stand for the extension of that rule to include the testator's direct declarations of intent as to which particular beneficiary will receive each parcel of land.

To allow such declarations of intent would allow a will to be made by a witness rather than by the testator.

Since the affidavit contains the impressions of the attorney as to Mr. Hartman's intent concerning who was to get lot 37, it is inadmissible as extrinsic evidence to explain the latent ambiguity in the will. Therefore, the trial judge was correct in not allowing this affidavit to be considered on the issue of what was meant by the phrase "my residence at 2615 Cooleemee Street."

[3]   We now address whether the trial judge was correct in granting summary judgment in favor of plaintiff. The Court of Appeals held that material issues of fact exist in this case, and therefore summary judgment is inappropriate. *Britt v. Upchurch,* 96 N.C. App. at 260, 385 S.E.2d at 368. However, this holding was dependent upon the Court of Appeals' holding that Mr. Adams' affidavit was admissible to show Mr. Hartman's intent, thus creating a material conflict with the extrinsic evidence offered by plaintiff.

Summary judgment is properly granted only if the evidence before the court indicates that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *Brenner v. Little Red School House, Ltd.,* 302 N.C. 207, 247 S.E.2d 206 (1981). Since we have held that the attorney's affidavit was properly excluded by the trial judge when ruling on defendant's summary judgment motion, we must look at the evidence which was properly before the judge when ruling on the motion. The evidence before the trial judge on the summary judgment motion included: (1) the copies of the deeds for lots 36 and 37 as well as affidavits attesting to the genuineness of these documents; (2) affidavits concerning the tax records for lots 36 and 37 in the Wake County Tax Office and the City of Raleigh Tax Office; and (3) plaintiff's affidavit explaining how the two lots were acquired and used by the Hartman family.

In her affidavit, plaintiff asserted that at the same time her parents purchased the house on lot 36 her grandmother purchased the adjoining lot 37 on behalf of her father. She further stated that, when the family moved into the house located on lot 36, lot 37 was overgrown with honeysuckle, poison ivy, and other weeds. According to plaintiff, the Hartman family cleared lot 37 and landscaped it by planting various trees, bushes, and other plants. As noted earlier, the affidavit contained the information that Mr. Hartman built a garage on lot 37 and partially paved a driveway

from the door of the garage across lot 36 to the street. Mr. Hartman also built a tool shed on lot 37 and used it to park the family's second car. Plaintiff stated that her father built a concrete sidewalk from the house on lot 36 to the garage on lot 37 and built several slate walkways across the property. The family dog was housed in a doghouse and dog pen constructed on lot 37. Plaintiff provided other facts in the affidavit which tended to show that the Hartman family used both lots 36 and 37 as their "residence."

To support her theory that "my residence at 2615 Cooleemee Street" refers only to lot 36, defendant offered evidence that the two lots (1) were purchased at different times; (2) were listed separately on the tax records; and (3) had different street addresses. Nothing else appearing, the fact that the lots were purchased at different times would explain why they were listed separately on the tax records. We also attach little significance to the different street addresses since there is no evidence that the testator used a different street address for lot 37 or was even aware that it carried an address other than 2615 Cooleemee Street. We conclude that defendant's forecast of evidence is not sufficient to raise a genuine issue of material fact as to whether Mr. Hartman considered "my residence at 2615 Cooleemee Street" to include both lots 36 and 37.

The question is really what Mr. Hartman considered to be his residence, and details of how Mr. Hartman and his family used the two lots are helpful in answering that question. Defendant has offered no admissible evidence to counter the evidence presented by plaintiff in her affidavit as to the facts showing that the family used both lots 36 and 37 as their residence. When viewed as a whole, the forecast of evidence points without contradiction to both lots 36 and 37 being used as a single residence by the Hartman family and that "my residence at 2615 Cooleemee Street" refers to both lots 36 and 37 rather than just to lot 36. There being no genuine issue of material fact, the trial judge was correct in granting plaintiff's motion for summary judgment.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is reinstated.

Reversed.