JAMES H. CREEKMORE, JR. v. JUDITH CAROLYN CREEKMORE, INDIVIDU-
ALLY, AND JUDITH CAROLYN CREEKMORE AND JAMES W. NARRON, AS
CO-PERSONAL REPRESENTATIVES OF THE ESTATE OF RUBY LAMM
CREEKMORE, JULIETTA CREEKMORE, AND MITZIE VIDA C. CREEKMORE

No. COA96-616

(Filed 20 May 1997)

### 1. Wills § 80 (NCI4th)—construction of will—letter from draftsman

In an action arising from a dispute between siblings over the
interpretation and effect of their mother's last will and testament,
it was not error for the trial court to exclude plaintiff's evidence
of a letter from the attorney draftsman as to what the testatrix
meant by the use of the term "real estate" where the will did not
contain any latent ambiguities and the letter would have altered
or affected the construction of the will.

**Am Jur 2d, Wills § 1141.**

### 2. Gifts or Donations § 12 (NCI4th)— check—inter vivos—not cashed—incomplete delivery—not gift

A $10,000 check given to defendant by testatrix before
her death was not a valid gift either *inter vivos* or *causa
mortis* where defendant did not cash the check before testatrix's
death because a check does not operate as an assignment of
funds, and the $10,000 was thus never delivered from testatrix
to defendant.

**Am Jur 2d, Gifts §§ 70-75.**

**Opening savings account in sole name of another, with-
out complete surrender of passbook, as a gift. 1 ALR2d
538.**

**Creation of joint savings account or savings certificate
as gift to survivor. 43 ALR3d 971.**

### 3. Executors and Administrators § 89 (NCI4th)— will—order of abatement

Testatrix's will contained an indication of the order of
abatement so that the co-personal representatives of the estate
were not bound by the order of abatement set forth in N.C.G.S.
§ 28A-15-5 where provisions of the will make it apparent that all
assets of the estate, except for the specific bequest of a ring and

a general bequest of personal effects and tangible personal property, shall be equally available to pay her debts.

**Am Jur 2d, Executors and Administrators §§ 487 et seq.**

Appeal by plaintiff and defendant Judith Carolyn Creekmore from judgments entered 2 October 1995 and 28 December 1995 by Judge Louis B. Meyer in Wilson County Superior Court. Heard in the Court of Appeals 18 February 1997.

*J. Gates Harris; and W. Osborne Lee, Jr., for plaintiff appellant-appellee.*

*Gailor & Associates, P.L.L.C., by Carole S. Gailor, for defendant appellant-appellee.*

COZORT, Judge.

This case arises from a dispute between a brother and a sister over the interpretation and effect of their mother's last will and testament. Three issues are presented by this appeal: (1) whether the trial court erred by entering a declaratory judgment regarding the intent of the testatrix in making her will; (2) whether the trial court erred by entering declaratory judgment that a $10,000.00 check given to defendant Judith Creekmore by testatrix was a completed *inter vivos* gift; and (3) whether the will in question specifies a controlling order of abatement thereby exempting the will from the order of abatement set forth in N.C. Gen. Stat. § 28A-15-5 (1984). We affirm the order of the trial court as to the issues of testatrix's intent and the order of abatement. We reverse the order of the trial court regarding the *inter vivos* gift.

Plaintiff, James H. Creekmore, Jr., and defendant, Judith Carolyn Creekmore, are the only children of the testatrix, Ruby Lamm Creekmore. During her final illness, testatrix executed a last will and testament, (hereinafter the "will"). The will disposed of testatrix's assets including real property, personal effects and shares of a closely held corporation denominated in the will as "Lamm Development Corporation," also known as "Lamm Development Co. of Wilson, Inc." (hereinafter "LDC"). LDC was a corporation organized by the Lamm and Creekmore families to hold certain real property in Wilson, North Carolina. Until her death, testatrix was an officer and stockholder of the corporation. Testatrix commonly referred to the corporation by the terms "the corporation," "Lamm

CREEKMORE v. CREEKMORE

[126 N.C. App. 252 (1997)]

Development Corporation," or "Lamm Development Company." Pursuant to the terms of the will, defendant Judith Creekmore received fifty percent of testatrix's stock in a life estate under Item VII of the will, and plaintiff James Creekmore and defendant each received twenty-five percent of the stock in fee under Item VIII of the will. On 6 February 1994, prior to her death, testatrix gave a check for $10,000.00 to defendant. According to defendant's affidavit, testatrix asked defendant not to deposit the check until after 1 March 1994 because she did not want the check to appear in her February bank statements to which plaintiff had access. According to defendant, at no time prior to her death did testatrix request defendant to return the check.

On 15 November 1994 plaintiff, James H. Creekmore, Jr., filed a complaint seeking a declaratory judgment to construe testatrix's will. After filing responsive pleadings, defendant filed on 28 August 1995 a motion for summary judgment and a motion *in limine* to preclude any evidence or testimony regarding the declarations of intent of testatrix in the making of her will of 8 February 1994. On 21 September 1995 the trial court filed an order granting defendant's motion *in limine* to the extent that plaintiff was precluded from introducing evidence or testimony of declarations of testatrix's intent in the making of her 8 February 1994 will. Also on 2 October 1995, the trial court filed a partial order for declaratory judgment. First, the trial court declared that the use of the term "Lamm Development Corporation" as used in testatrix's will was intended by testatrix to mean "Lamm Development Co. of Wilson, Inc." Secondly, the trial court declared that the words "real estate," as used in the will, do not constitute a latent ambiguity. Plaintiff's request to construe the words, "real estate" in Items VI and VII of the will to mean, all real estate held in testatrix's name and all her interest in Lamm Development Co. of Wilson, Inc. was denied. Finally, the trial court declared that the co-personal representatives of the estate were empowered to sell real property, with court approval of all proposed sales. Further the co-personal representatives could sell property to make assets to satisfy debts and claims against the estate in accordance with the terms of the will. On 14 September 1995 the trial court declared that defendant Judith Creekmore, in her individual capacity, did not have authority under the will to lease or remove or raze any real property or any improvement thereon, that was devised to plaintiff James Creekmore as an undivided one-half interest in Item VI of the will. In its final declaration on 28 December 1995, the court incorporated its prior decla-

CREEKMORE v. CREEKMORE

[126 N.C. App. 252 (1997)]

rations and made declarations as to the following issues. First, the estate of Ruby Lamm Creekmore has an obligation for payment to Judith Creekmore of the $10,000.00 check dated 7 February 1994. Further, testatrix's estate is indebted to Lamm Development Co. of Wilson, Inc., in the amount of $188,689.43. This is the sum equal to the account receivable owed by testatrix for cash advances made to her as shareholder loans by Lamm Development Co. of Wilson, Inc., during her lifetime. The apportionment of the debt of the estate is premature and a matter for estate administration to be handled by the co-personal representatives. Plaintiff appeals from judgments filed 2 October 1995 and 28 December 1995. Defendant cross-assigns error to the order entered 2 August 1995 and the judgment entered 28 December 1995.

[1] Plaintiff first argues that the trial court erred in entering a declaratory judgment as to the intent of testatrix in her will without hearing evidence. There is nothing in the record to show that plaintiff made an offer of proof as to the evidence he would have offered regarding the intent of testatrix. However, in his statement of facts plaintiff asserts that the draftsman of the will, attorney David W. Woodard, made a mistake which changed the intent of testatrix regarding testamentary disposition of the LDC stock. Plaintiff has included in the appendix to his brief a copy of the letter written by David W. Woodard explaining the error he made in drafting testatrix's will. In the letter, Mr. Woodard explains that testatrix intended the words "real estate" to include real property as well as the LDC stock. Assuming this letter was properly tendered to the trial court, we find plaintiff's argument unpersuasive.

> The general rule in North Carolina is that a latent ambiguity presents a question of identity and that extrinsic evidence may be admitted to help identify the person or the thing to which the will refers. This extrinsic evidence is admissible "to identify a person or thing mentioned therein." This evidence is not admissible "to alter or affect the construction" of the will. "Surrounding circumstances as well as the declarations of the testator are relevant to the inquiry." "Surrounding circumstances" do not refer to the intent of the testator, rather these circumstances mean the *"facts* of which the testator *had knowledge* when she made her will."

*Britt v. Upchurch*, 327 N.C. 454, 458, 396 S.E.2d 318, 320 (1990) (emphasis in original) (citations omitted). Testator's declarations which cast light upon the testator's usage of particular terms in a will

are admissible. *Id.* at 460, 396 S.E.2d at 321. However, in *Britt*, the North Carolina Supreme Court held that an affidavit of the attorney who drafted testator's will containing the attorney's impressions as to testator's intent concerning who was to receive certain real property was not admissible to remove a latent ambiguity. *Id.* at 455, 396 S.E.2d at 322.

In the present case, plaintiff argues that a latent ambiguity exists as to the use of the term "Lamm Development Corporation" and the words "real estate." The trial court concluded as a matter of law that a latent ambiguity existed as to the term "Lamm Development Corporation." The court further concluded that a latent ambiguity did not exist as to the use of the words "real estate." The trial court concluded that the use of the term "Lamm Development Corporation" was intended by testatrix to mean "Lamm Development Co. of Wilson, Inc." In an order filed 2 October 1995, the trial court found, "[c]ounsel for Plaintiff, does not contest the proposition that the entity described in Item VII of the Will of Ruby Lamm Creekmore as "Lamm Development Corporation" was intended by the testatrix to mean "Lamm Development Co. of Wilson, Inc." Thus, plaintiff has conceded this issue. Plaintiff also argues that evidence of testatrix's intent as to the meaning of the words "real estate" should have been admitted into evidence. The letter offered by plaintiff as evidence of testatrix's intent contains the impressions of attorney-draftsman David Woodard as to what testatrix meant by "real estate." This evidence is inadmissible extrinsic evidence because it would alter or affect the construction of the will. We find the trial court properly entered declaratory judgment as to testatrix's intent.

[2] Plaintiff's second argument is that the trial court erred in entering declaratory judgment that the estate is indebted to defendant for the $10,000.00 check made by testatrix because the check was an *inter vivos* gift to take effect in the future and was therefore void. We hold that the trial court erred in holding that the $10,000.00 check was a valid *inter vivos* gift.

North Carolina recognizes two types of valid gifts, *inter vivos* gifts and gifts *causa mortis*. "In all cases of gifts, whether inter vivos or causa mortis, there must be a delivery to complete the gift. And, in North Carolina, the law of delivery is the same for gifts inter vivos and gifts causa mortis. However, '[t]he chief distinguishing characteristics between a gift *inter vivos* and one *causa mortis* are that the former is absolute and takes effect *in praesenti*, while the other is

revocable, and takes effect *in futuro.*' " *Atkins v. Parker,* 7 N.C. App. 446, 450, 173 S.E.2d 38, 41 (1970) (citations omitted).

> In order to constitute a valid gift, there must be present two essential elements: 1) donative intent; and 2) actual or constructive delivery. These two elements act in concert, as the present intention to make a gift must be accompanied by the delivery, which delivery must divest the donor of all right, title, and control over the property given. . . . The intention to give, unaccompanied by the delivery, constitutes a mere promise to make a gift, which is unsupported by consideration, and, therefore, non-obligatory and revocable at will. Likewise, delivery unaccompanied by donative intent does not constitute a valid gift.

*Courts v. Annie Penn Memorial Hospital,* 111 N.C. App. 134, 138-39, 431 S.E.2d 864, 866 (1993) (citations omitted).

In the present case, we hold that the check in the amount of $10,000.00 is neither a valid *inter vivos* gift, nor a valid gift *causa mortis.* The critical issue for this Court, which is one of first impression, is whether a gift in the form of a bank check must be accepted and honored by the drawee bank prior to the death of the donor in order to be effective. The courts of this state have not answered this question, but the majority rule elsewhere is that a donor's own check drawn on a personal checking account is not, prior to acceptance or payment by the bank, the subject of a valid gift either *inter vivos* or *causa mortis. See Felder v. Felder,* 32 S.E.2d 550, 551 (Ga. Ct. App. 1944); *Succession of Schneider,* 199 So.2d 564, 568, *application denied,* 202 So.2d 652 (La. Ct. App. 1967); *In re Estate of Bolton,* 444 N.W.2d 482, 483 (Iowa 1989); *Woo v. Smart,* 442 S.E.2d 690, 692-93 (Va. 1994). "The gift of [a] donor's check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee." 38A C.J.S. *Gifts* § 56 at 240 (1996) (footnote omitted).

The Uniform Commercial Code makes apparent that transfer of a check does not operate as an assignment of money on deposit. "A check or other draft does not of itself operate as an assignment of funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until the drawee accepts it." N.C. Gen. Stat. § 25-3-408 (1995). Thus,

> [b]ecause the check does not operate as an assignment of funds, mere delivery of a check does not place the gift beyond the

**CREEKMORE v. CREEKMORE**

[126 N.C. App. 252 (1997)]

donor's power of revocation and the check simply becomes an unenforceable promise to make a gift. . . .

. . . Until the check is paid, the donor retains [dominion and control] over the funds and the gift is incomplete; the donor could stop payment or write another check for the funds payable to a third person, or the donor may die, thus revoking the donor-drawer's command to the drawee bank to pay the money.

*Woo*, 442 S.E.2d at 693 (citations omitted).

Therefore, because defendant did not cash the check before testatrix's death, the $10,000.00 was never delivered from testatrix to defendant and the attempted gift was incomplete.

**[3]** Plaintiff's third assignment of error is that the trial court erred in entering a declaratory judgment that testatrix's will contains an indication of the order of abatement and that the co-personal representatives of the estate are not bound by N.C. Gen. Stat. § 28A-15-5. We disagree.

The order of abatement of assets is set forth in N.C. Gen. Stat. § 28A-15-5.

(a) General Rules.-In the absence of testamentary indication as to the order of abatement, or some other controlling statute, shares of devisees and of heirs abate, without any preference or priority as between real and personal property, in the following order:

(1) Property not disposed of by the will;

(2) Residuary devises;

(3) General devises;

(4) Specific devises.

For purposes of abatement, a demonstrative devise of money or property payable out of or charged on a particular fund or other property is treated as a specific devise; but if the particular fund or property out of which the demonstrative devise is to be paid is nonexistent or insufficient at the death of the testator, the deficiency is to be payable out of the general estate of the decedent and is to be regarded as a general devise and must abate pro rata with other general devises. Abatement within each classification is in proportion to the amounts of property each of the benefi-

ciaries would have received, had full distribution of the property been made in accordance with the terms of the will.

Items I, II, III and IV of the will, qualify Item V of the will, and collectively, along with Item IX of the will, furnish an indication of testatrix's wishes as to the order of abatement and make apparent that any and all assets of testatrix's estate, (save for the specific bequest provided in Item III and the general bequest provided in Item IV of the will), shall be equally available to pay her debts. The relevant portions of the will are as follows:

## ITEM I.

I direct that all of my legal debts, my funeral expenses, including the cost of a suitable monument at my grave, and the cost of the administration of my estate be paid out of the assets of my estate as soon as practicable after my death.

## ITEM II.

I direct that all estate, inheritance, or other taxes imposed by reason of my death upon property passing under or outside this Will and made payable under the laws of the United States, this state or any other state or country shall be paid out of the general funds of my estate.

## ITEM III.

I will and bequeath my princess diamond ring to my daughter, JUDITH CAROLYN CREEKMORE absolutely.

## ITEM IV.

I bequeath all other personal effects and tangible personal property owned by me at the time of my death to my children, JUDITH CAROLYN CREEKMORE and JAMES HARVEY CREEKMORE, JR., to be divided among them with such equality and appropriateness as my Personal Representatives, in their sole discretion, shall determine.

The above provisions of this Item IV notwithstanding, any items of tangible personal property referred to in a document in my hand and signed by me, shall be distributed according to the provisions of said handwritten document. The remaining items of tangible personal property shall be distributed pursuant to this Item IV.

## ITEM V.

I bequeath and devise and appoint all the residue and remainder of my property and estate wheresoever situated (including all property which I may acquire or become entitled to after the execution of this Will), hereinafter referred to as my residuary estate, to my Executor, and I direct that my Executor shall administer and dispose of my said residuary estate in accordance with the terms and provisions set forth and contained in the succeeding provisions of this Will.

## ITEM VI.

I will and devise unto my son, JAMES HARVEY CREEKMORE, JR., a one-half (1/2) undivided interest in and to all of the real estate that I may own at the time of my death, in fee simple.

## ITEM VII.

I will and devise unto my daughter, JUDITH · CAROLYN CREEKMORE, a one-half (1/2) undivided interest in and to all of the real estate that I may own at the time of my death; and a one-half (1/2) undivided interest in all my stock in Lamm Development Corporation that I own at the time of my death for and during the term of her life. . . .

\* \* \* \*

## ITEM IX.

I appoint my children, JUDITH CAROLYN CREEKMORE and JAMES HARVEY CREEKMORE, JR., as Co-Executors of this my Last Will and Testament to serve without bond. I vest in my Co-Executors and my Trustees full power and authority to sell, transfer and convey any property, real or personal, which I may own at the time of my death and to do every other act and thing necessary or appropriate for the complete administration of my estate. I hereby grant to my Co-Executors (including any substitute or successor personal representative) the continuing, absolute, discretionary power to deal with any property, real or personal, held in my estate or in any trust, as freely as I might in the handling of my own affairs. Such powers may be exercised independently and without prior or subsequent approval of any court or judicial authority, and no person dealing with the Co-Executors or my Trustees shall be required to inquire into the propriety of any of

their actions. I specifically grant to my Co-Executors and my Trustees the power to make distributions in cash or in specific property, real or personal, or an undivided interest therein or partly in cash and partly in such property, and to do so without regard to the income tax basis for federal tax purposes of specific property allocated to any beneficiary (including any trust). Without in any way limiting the generality of the foregoing and subject to North Carolina General Statutes, Section 32-26, I hereby grant to my Co-Executors all the powers set forth in North Carolina General Statutes, Section 32-27, and these powers are hereby incorporated by reference and made a part of this instrument and such powers are intended to be in addition to and not in substitution of the powers conferred by law.

By the terms of the will the "residuary" of testatrix's estate includes all assets passing under provisions VI through VIII including real estate. Under this construction plaintiff will receive a one-half undivided interest in fee in all of the real estate which testatrix owned at the time of her death, subject, however, to the qualifier that it is received from the "residuary estate." Defendant is entitled to receive a one-half undivided interest in real estate and stock in LDC for the term of her life, subject to the provision in Item V that it will come out of the "residuary estate." Testatrix's will indicates an order of abatement, and the co-personal representatives are not bound by N.C. Gen. Stat. § 28A-15-5.

Defendant cross-assigns error to the trial court's granting of plaintiff's motion to strike defendant's first affirmative defense of lack of justiciable controversy as to plaintiff's complaint. However, the trial court denied plaintiff's motion to strike and defendant has not been aggrieved by the trial court's ruling. Defendant also argues that plaintiff's first claim for relief fails to set forth sufficient facts to allege a justiciable controversy. We find no error. Plaintiff alleged facts to state a justiciable controversy sufficient to invoke the subject matter jurisdiction of the courts of this state. *Hicks v. Hicks*, 60 N.C. App. 517, 521-22, 299 S.E.2d 275, 278 (1983).

We affirm the judgment of the trial court as to the issue of testatrix's intent and the order of abatement. We reverse the judgment of the trial court regarding the attempted *inter vivos* gift and remand for entry of an order modifying the declaratory judgment to reflect that the estate is not indebted to defendant Judith Creekmore in the amount of $10,000.00.

Affirmed in part, reversed and remanded in part.

Judges EAGLES and JOHN concur.