RL REGI NORTH CAROLINA, LLC, Plaintiff-Appellant v. THE ESTATE OF DAN L. MOSER, and MILEY W. GLOVER, IN HIS CAPACITY AS ADMINISTRATOR OF THE ESTATE, Defendants-Appellees

No. COA11-1470

(Filed 21 August 2011)

## Estates—powers of executors—loan guaranty—purposes of will

The trial court did not err by granting defendants' motion for summary judgment in an action against an estate and its executor on a guaranty that was signed by previous co-executors. The language of the will clearly granted the co-executors the authority to bind the estate as guarantor of a loan to carry out the purposes of the will,

which was to make specific gifts, not to keep the estate open indefinitely. An accompanying trust did not speak to the powers of the executors.

Appeal by Plaintiff from judgment entered 24 August 2011 by Judge W. Erwin Spainhour in Superior Court, Union County. Heard in the Court of Appeals 20 March 2012.

*Nelson Mullins Riley & Scarborough, LLP, by Christopher J. Blake and Kelli Goss Hopkins, for Plaintiff-Appellant.*

*Perry, Bundy, Plyler, Long & Cox, L.L.P., by H. Ligon Bundy and Melanie D. Cox, for Defendants-Appellees.*

McGEE, Judge.

RL Regi North Carolina, LLC (Plaintiff), filed a complaint on 2 December 2010, seeking to recover damages arising out of an alleged breach of guaranty by the Estate of Dan L. Moser and Miley W. Glover in his capacity as Administrator of the Estate (Defendants). Defendants filed an answer on 21 January 2011. Plaintiff filed a motion for summary judgment on 21 June 2011 and Defendants filed a motion for summary judgment on 19 July 2011. The trial court granted Defendants' motion for summary judgment by order entered 24 August 2011. Plaintiff appeals.

## I. Factual Background

The parties stipulated that there were no issues of material fact and, in its order granting Defendants' motion for summary judgment, the trial court summarized the undisputed facts. The following is a paraphrasing of the trial court's summary of the facts.

Dan L. Moser (Mr. Moser) was the sole shareholder of Dan Moser Company, Inc. (DMC), a real estate development company. Mr. Moser died testate on 20 February 2006. In his will (the Will), Mr. Moser named his attorney, Richard R. Hutaff (Mr. Hutaff) and his accountant, Thomas M. Moyer, III (Mr. Moyer), as co-executors of his estate (the Estate). Mr. Hutaff and Mr. Moyer were issued Letters Testamentary on 23 February 2006.

The Estate included total assets of $13,490,723.50, including $5,619,829.35 in bank accounts and certificates of deposit, and $7,294,949.92 in securities. The majority of the securities in the Estate consisted of DMC stock valued at $6,153,003.00. After being appointed co-executors of the Estate, Mr. Hutaff and Mr. Moyer began to man-

age the affairs of DMC. They distributed the stock of DMC to themselves, elected themselves directors of DMC, and elected Mr. Moyer as chairman of the board on 15 March 2006.

DMC owned several tracts of land that were in various stages of development as residential subdivisions, including at least one tract of undeveloped land located in Cabarrus County (Meadow Creek 2). Meadow Creek 2 consisted of approximately 54.68 acres that DMC had owned since 2001. Mr. Hutaff and Mr. Moyer caused DMC to begin negotiations with a homebuilder, Royce Homes (Royce), to purchase DMC's inventory of residential lots. A contract with Royce (the contract) was approved by DMC's board of directors and signed by DMC on 18 April 2006.

Under a "take down schedule" in the contract, Royce was obligated to buy approximately 567 lots in various DMC subdivisions. The take down schedule required DMC to sell to Royce 130 lots in Meadow Creek 2 over a period of forty-two months, beginning one year from the date of the contract, although Meadow Creek 2 was undeveloped land and was not a developed subdivision at the time the contract was signed.

DMC applied to Regions Bank, Plaintiff's predecessor in interest, for a loan on 3 May 2006 for the purpose of developing Meadow Creek 2 into a subdivision. DMC made the final decision to borrow the money from Regions Bank on 2 August 2006. Regions Bank's file regarding this loan transaction contained a document dated 20 September 2006 and titled "Credit Offering Memorandum." This Credit Offering Memorandum contained details concerning the proposed loan transaction, which the trial court summarized as follows:

A. Regions [Bank] knew that [Mr.] Moser was deceased, and that [Mr.] Hutaff, [Mr.] Moser's attorney, and [Mr.] Moyer, [Mr.] Moser's accountant, were managing DMC.

B. Regions [Bank] proposed to lend the sum of $2,928,000.00 to DMC.

C. Meadow Creek 2 was "raw land" and was worth $750,000.00.

D. The loan was to be used to develop Meadow Creek 2 into a 130 lot residential subdivision which, when developed, would be worth $3,905,000.00.

E. DMC had a contract to sell the lots in Meadow Creek 2 to Royce for $4,938,000.00 pursuant to the Royce Contract.

F.   Royce was also a customer of Regions [Bank].

G.   [Mr.] Moyer had agreed to have the Estate to guarantee the loan.

Regions Bank offered to make the loan to DMC on 22 September 2006. Regions Bank required the Estate to guarantee the loan. DMC closed the loan on 18 January 2007 and signed loan documents, including: (1) a promissory note in the amount of $2,928,000.00; (2) a deed of trust on Meadow Creek 2; and (3) a loan agreement.

Pursuant to the loan documents, development of Meadow Creek 2 was to be completed within two years, and the loan was to be paid in full at that time. Mr. Hutaff and Mr. Moyer, as co-executors of the Estate, also signed a guaranty obligating the Estate to guarantee repayment of the loan. Mr. Hutaff and Mr. Moyer resigned as co-executors of the Estate on 3 December 2007 and Miley W. Glover was appointed Administrator of the Estate on 6 December 2007.

The loan matured on 17 January 2009 and DMC subsequently defaulted on the loan and filed bankruptcy. Regions Bank foreclosed upon Meadow Creek 2 and purchased the property for $1,289,288.00 at a foreclosure sale. Pursuant to the guaranty against the Estate, Regions Bank filed a notice of claim on 19 March 2010 in the amount of $2,615,051.13 with the Union County Clerk of Court. A Denial of Claim was filed by the Estate on 2 September 2010. Plaintiff purchased the loan documents from Regions Bank, which executed an assignment to Plaintiff on 30 September 2010. The outstanding balance of the loan as of 9 June 2011 was $1,624,479.33.

The Estate's file did not contain any order approving, or otherwise authorizing, Mr. Hutaff and Mr. Moyer to enter into the guaranty. Plaintiff does not contend that Mr. Hutaff and Mr. Moyer obtained court approval to enter into the guaranty.

The Will contains the following pertinent provisions:

## ITEM I

**Direction to Pay Debts with Discretionary Refinancing by Executor.** I direct that all my legally enforceable debts, secured and unsecured, be paid as soon as practicable after my death. I direct that my Executor may cause any debt to be carried, renewed and refinanced from time to time upon such terms and with such securities for its repayment as my Executor may deem advisable taking into consideration the best interest of the beneficiaries hereunder. If at the time of my

death any of the real property, excep[]t for my residence located at 718 Eagle Point Circle, Weddington, NC 28107 (Lot #438 Lake Providence North Subdivision), herein devised is subject to any mortgage, I direct that the devisee taking such mortgaged property shall take it subject to such mortgage and that the devisee shall not be entitled to have the obligation secured thereby paid out of my general estate. I direct my Executor and Trustee to payoff and satisfy any mortgage or mortgages on my said residence, out of the assets of my Estate or Trust estate, and the same not be charged against any recipient, beneficiary, transferee or owner of any such property or, interests in property included in my estate.

. . . .

## ITEM VIII

**Powers for Executor.** By way of illustration and not of limitation and in addition to any inherent, implied or statutory powers granted to Executors generally, my Executor is specifically authorized and empowered with respect to any property, real or personal, at any time held under any provision of this my Will: to allot, allocate between principal and income, assign, borrow, buy, care for, collect, compromise claims, contract with respect to, continue any business of mine, convey, convert, deal with, sell or dispose of either at public or private sale, enter into, exchange, hold, improve, incorporate any business of mine, invest, lease, manage, mortgage, grant and exercise options with respect to, take possession of, pledge, receive, release, repair, sell (at public or private sale), sue for, to make distributions or divisions in cash or in kind or partly in each without regard to the income tax basis of such asset, and in general, to exercise all the powers in the management of my Estate which any individual could exercise in the management of similar property owned in his or her own right, upon such terms and conditions as to my Executor may seem best, and to execute and deliver any and all instruments and to do all acts which my Executor may deem proper or necessary to carry out the purposes of this my Will, without being limited in any way by the specific grants of power made, and without the necessity of a court order.

Item III of the Will provided that Mr. Moser's wife receive all of the household goods. Item IV of the Will provided for the remainder of the Estate to pour over into an inter-vivos trust, as follows:

## ITEM IV

**Pour-Over Gift to Trustee of Testator's Inter Vivos Trust.** I give, devise and bequeath all the rest, residue and remainder of my property of every kind and description (including lapsed legacies and devises), wherever situate[d] and whether acquired before or after the execution of this Will, to the successor Trustee under that certain Trust Agreement as Amended and Restated between me as Settlor and me as Trustee executed prior to the execution of this Will on the 6th day of August, 2002. My Trustee shall add the property bequeathed and devised by this Item to the principal of the above Trust and shall hold, administer and distribute the property in accordance with the provisions of the Trust Agreement, including any amendments thereto made before my death.

After he signed the Will, Mr. Moser amended the 2002 Trust Agreement several times. The most recent amendment was dated 6 June 2005 and was titled "Third Amendment and Restatement of Trust Agreement of Dan L. Moser" (the Trust Agreement). The Trust Agreement appointed Mr. Hutaff and Mr. Moyer as co-trustees.

Pursuant to the Trust Agreement, Mr. Moser's ownership interest in a business known as Carolina Golf Developers, LLC was to be distributed to Mr. Moser's sister and her children. Mr. Moser's wife was to receive Mr. Moser's residence, debt free, and the sum of $1,000,000.00. $500,000.00 was to be distributed to a Charitable Remainder Trust for the benefit of Mr. Moser's father during his lifetime; upon his death, the balance of the Charitable Remainder Trust was to be distributed to Mr. Moser's church, the Mineral Springs United Methodist Church (the Church).

Pursuant to the Trust Agreement, the residue of the Trust assets, including DMC, was to be distributed to the Church. The pertinent portion of the Trust Agreement provided as follows:

**Residue.** The rest residue and remainder of the Trust estate, after satisfying the obligations of the Trust estate as set forth above, satisfying the specific bequests and specific devises set forth above and after funding and setting aside the Trusts set forth above, shall be paid over and distributed to my Trustees to have, to hold and distribute the same, for the benefit of the **MINERAL SPRINGS UNITED ·METHODISTS CHURCH** in Mineral Springs, North Carolina, as follows:

RL REGI N.C., LLC v. MOSER

[222 N.C. App. 528 (2012)]

As soon as it is reasonably practicable after my death, my Trustee is to sell, at public or private sale, my non-liquid assets, which consist of, but are not limited to, certain real estate and interests in various closely held stocks and other investments, and to use the net proceeds from the sale of my assets to invest the same in readily marketable assets, including but not limited to certificates of deposit, stocks and bonds, and pay all the net income therefrom in convenient installments but no less frequently than quarterly-annually to the **MINERAL SPRINGS UNITED METHODISTS CHURCH.** In addition, my Trustee shall pay to or apply for the benefit of the **MINERAL SPRINGS UNITED METHODISTS CHURCH** such sums from the principal of this residuary trust in convenient installments but no less frequently than annually (for no more than ten years) such sums as necessary so that the entire residuary of my Trust estate shall be paid to or applied for the benefit of the **MINERAL SPRINGS UNITED METHODISTS CHURCH** on or before the eleventh anniversary of my death.

When Mr. Hutaff and Mr. Moyer resigned as co-executors of the Estate, they filed an accounting with the Union County Clerk of Court. The accounting shows that, as of 29 November 2007, the stock of DMC had not been distributed to the Trust.

## II. Procedural Background

Plaintiff filed its complaint seeking to recover from the Estate the remaining principal and interest due under the promissory note and the guaranty executed by the Estate. Defendants denied their liability on the grounds that Mr. Hutaff and Mr. Moyer were not authorized by the Will, any statute, or any court to sign a guaranty on behalf of the Estate. After filing cross-motions for summary judgment, the parties stipulated to the facts recited above. The trial court concluded "as a matter of law, that [Mr.] Hutaff [and Mr.] Moyer were not authorized as [c]o-[e]xecutors of the Estate of Dan L. Moser to enter into the Guaranty Agreement . . ., [and] that the Estate of Dan L. Moser is not obligated on the Guaranty[.]" The trial court granted summary judgment in favor of Defendants. Plaintiff appeals.

## III. Issues on Appeal and Standard of Review

On appeal, Plaintiff contends the trial court erred by granting summary judgment in favor of Defendants for the following reasons: (1) Mr. Hutaff and Mr. Moyer were authorized by the express authority granted in the Will and the Trust Agreement to sign a guaranty for

the Regions Bank loan to continue DMC's real estate development business; (2) the authority granted to Mr. Hutaff and Mr. Moyer was "consistent with the applicable North Carolina General Statutes[;]" (3) the Will and the Trust Agreement did not require "the immediate liquidation of the real estate assets of DMC[;]" and (4) the guaranty agreement was enforceable against the Estate. "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted).

## IV. Analysis

Plaintiff first argues that the provisions of the Will and the Trust Agreement expressly authorized Mr. Hutaff and Mr. Moyer to continue DMC's real estate development business and, therefore, to sign the guaranty on behalf of the Estate. We find that the primary dispute in this case concerns the meaning and interpretation of the Will and the Trust Agreement, despite the parties' numerous additional arguments.

This Court summarized the pertinent rules for the interpretation of a will in *Hammer v. Hammer*, 179 N.C. App. 408, 410-11, 633 S.E.2d 878, 881 (2006):

> "The intent of the testator is the polar star that must guide the courts in the interpretation of a will." *Coppedge v. Coppedge*, 234 N.C. 173, 174, 66 S.E.2d 777, 778 (1951). The court looks at every provision of the will, weighing each statement, and gathering the testator's intent from the four corners of the instrument. *Holland v. Smith*, 224 N.C. 255, 257, 29 S.E.2d 888, 889 (1944). Extrinsic evidence may be considered if the plain words of a provision are insufficient to identify the person or thing mentioned therein. *Redd v. Taylor*, 270 N.C. 14, 22 153 S.E.2d 761, 766 (1967). However, extrinsic evidence may not be introduced " 'to alter or affect the construction' of the will." *Britt v. Upchurch*, 327 N.C. 454, 458, 396 S.E.2d 318, 320 (1990) (citations omitted).

> When the court must give effect to a will provision whose language is ambiguous or doubtful, it must consider the will "in the light of the conditions and circumstances existing *at the time the will was made.*" *Wachovia Bank & Trust Co. v. Wolfe*, 243 N.C. 469, 473, 91 S.E.2d 246, 250 (1956) (emphasis in original). This includes consideration of the circumstances attendant, that is,

the relationships between testator and the named beneficiaries, as well as the condition, nature and extent of the testator's property. *Id.* By taking into account these factors, the court is said to " 'put itself in the testator's armchair,' " using extrinsic evidence to see the world from the testator's viewpoint, but not to divine his intent. *Id.* at 474, 91 S.E.2d at 250 (citations omitted). Rather, intent is to be determined in accordance with the established rules of construction. *Id.* at 478, 91 S.E.2d at 253.

According to our Supreme Court, extrinsic evidence is never competent to establish the intent of the testator. *Id.*; *Britt*, 327 N.C. at 458, 396 S.E.2d at 320 (holding other extrinsic evidence admissible to identify ambiguous property, but not attorney's affidavit as to testatrix's intent); *Redd*, 270 N.C. at 23, 153 S.E.2d at 767 (holding evidence of previous affiliations and contributions competent to identity beneficiary organization, but not declarations made by testatrix). The policy behind this principle is stated succinctly: "Wills are made by testators, not by witnesses." *Thomas v. Houston*, 181 N.C. 91, 94, 106 S.E. 466, 468 (1921).

In the present case, the Will provides:

my Executor is specifically authorized and empowered with respect to any property, real or personal, at any time held under any provision of this my Will: to . . . *borrow,* buy, . . . *contract with respect to, continue any business of mine,* . . . deal with, . . . enter into, exchange, hold, improve, incorporate any business of mine, *invest,* . . . *mortgage,* grant and exercise options with respect to, . . . and in general, to exercise all the powers in the management of my Estate which any individual could exercise in the management of similar property owned in his or her own right, upon such terms and conditions as to my Executor may seem best, and to execute and deliver any and all instruments and *to do all acts which my Executor may deem proper or necessary to carry out the purposes of this my Will,* without being limited in any way by the specific grants of power made, and without the necessity of a court order.

(emphasis added).

We therefore find that the language of the Will clearly granted the executors the authority to bind the Estate as guarantor of the loan, if doing so was deemed "proper or necessary to carry out the purposes" of the Will. We find nothing in the Will that indicates "the purposes" of the Will. However, the Will explicitly provides that Mr. Moser made

a gift of the "remainder of [his] property of every kind and description (including lapsed legacies and devises), wherever situate[d] and whether acquired before or after the execution of this Will, to the successor Trustee" of the Trust. Reviewing the Will in its entirety, we hold that the purpose of the Will was to make various specific gifts as described above to, *inter alia*, Mr. Moser's wife, and then to give the remainder of Mr. Moser's "property of every kind and description" over to the Trust to be managed by the Trustee. Thus, the purpose of the Will was not to keep the Estate open indefinitely.

N.C. Gen. Stat. § 28A-13-2 provides that:

> A personal representative is a fiduciary who, in addition to the specific duties stated in this Chapter, *is under a general duty to settle the estate of the personal representative's decedent as expeditiously and with as little sacrifice of value as is reasonable under all of the circumstances.* A personal representative shall use the authority and powers conferred upon the personal representative by this Chapter, by the terms of the will under which the personal representative is acting, by any order of court in proceedings to which the personal representative is party, and by the rules generally applicable to fiduciaries, for the best interests of all persons interested in the estate, and with due regard for their respective rights.

N.C. Gen. Stat. § 28A-13-2 (2011) (emphasis added). In the absence of any provisions of the Will to the contrary, we conclude that Mr. Hutaff and Mr. Moyer were under the statutorily provided "general duty to settle [the Estate] . . . as expeditiously . . . as [was] reasonable under all of the circumstances." *Id.*

Plaintiff contends that

> when construed in their entirety, Moser's Will and Trust Agreement did not require immediate liquidation of the real estate assets owned by DMC, nor do the Will and Trust Agreement require the immediate sale of any undeveloped real estate assets . . . . Instead, both the Will and Trust Agreement contain provisions evidencing Moser's express intent that his Co-Executors continue the real estate development business of DMC.

Plaintiff directs our attention to the provisions of the Trust Agreement, including the following: "[a]s soon as it is reasonably practicable after my death . . . so that the entire residuary of my Trust

estate shall be paid to or applied for the benefit of [the church] on or before the eleventh anniversary of my death." We are not persuaded by Plaintiff's argument. The terms of the Trust Agreement do not speak to the authority of the co-executors of the Estate. While the provisions of the Trust Agreement do appear to contemplate the carrying on of Mr. Moser's business, we interpret those provisions as authorizing the Trustee of the Trust to carry on Mr. Moser's business and not the co-executors of the Estate. We note that Mr. Hutaff and Mr. Moyer signed the guaranty in their capacities as co-executors of the Estate and *not* in their capacities as trustees of the Trust. The Trust was not involved in the signing of the guaranty.

Thus, we find the Trust Agreement and the provisions therein not to be relevant to our determination of Mr. Hutaff's and Mr. Moyer's authority as co-executors of the Estate. Mr. Hutaff and Mr. Moyer were authorized to act only "to carry out the purposes" of the Will, and were also under a "general duty to settle [the Estate] . . . as expeditiously . . . as [was] reasonable under all of the circumstances." N.C.G.S. § 28A-13-2. We therefore conclude that the provisions of the Will did not authorize Mr. Hutaff and Mr. Moyer to sign the guaranty on behalf of the Estate and we hold the trial court did not err in granting Defendants' motion for summary judgment.

Affirmed.

Judges CALABRIA and GEER concur.